## HARRYMAN et al v. BOWLIN.

No. 20308.  Opinion Filed Sept. 15, 1931.

Rehearing Denied Nov. 24, 1931.

W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair, and Charles R. Alexander, for plaintiffs in error.

L. A. Foster, for defendant in error.

LESTER, C. J. This is an appeal from the district court of Woodward county, and the parties appear in the same order as in the court below. The action was brought on a contract wherein the plaintiffs sold the defendant a carload of broom corn. The plaintiffs followed the instructions of defendant and sent the bill of lading with draft attached to the New State Bank at Woodward, Okla. At the trial certain stipulations were agreed to by the parties. The stipulations that are material to the issues herein are:

"It is agreed that the defendant, C. E. Bowlin, directed the plaintiffs to send the sight draft and bill of lading to the New State Bank;

"That the contract of purchase consisted of letters, identification of which is waived, and admitted for the purpose of this action without objection; * * *

"That on or about the 12th day of October, 1923, a sight draft was in regular banking channels forwarded to the New State Bank of Woodward, Okla., and there presented to the defendant, C. E. Bowlin;

"That the car of broom corn was shipped to C. E. Bowlin from Wichita, Kan., according to the terms of the contract.

"That on the 12th day of October, the defendant, C. E. Bowlin, deposited in the New State Bank sufficient funds to take care of the sight draft, and that the New State Bank on that date delivered the bill of lading to Mr. Bowlin and he took possession of the car of broom corn.

"That $1,800 of that was by check drawn on the First National Bank and the funds of the New State Bank augmented in the sum of $1,800 by reason of the check drawn on the First National Bank in payment of the draft.

"It is further stipulated and agreed that the New State Bank was a banking institution organized under the laws of the state of Oklahoma with its place of business at Woodward, Okla., and that it was open for the transaction of business on October 12, 1923, and that on the morning of the 13th of October, 1923, the New State Bank failed to open its doors, and was by the Bank Commissioner declared to be insolvent and taken over by the Bank Commissioner, and that on the 13th day of October, 1923, the assets of the New State Bank were turned over to O. B. Mothersead, Bank Commissioner of the state of Oklahoma, for the purpose of liquidating the affairs of that bank.

"It is further stipulated and agreed that thereafter, and in the latter part of the year 1923, and the first of 1924, the plaintiffs filed with O. B. Mothersead, by correspondence, a claim against the assets of the New State Bank in the sum of $2,154.03, arising from the transaction in suit, and in which claim the plaintiffs claimed a preference right of payment in that sum of money out of the assets of the New State Bank, and that O. B. Mothersead, as Bank Commissioner of the state of Oklahoma, allowed the claim as a preferred claim in the sum of $1,800 and rejected it as a preferred claim in the sum of $354.03." (C.-M. pp. 58-59.)

The trial court at the conclusion of the evidence rendered its judgment for the defendant on the ground that the plaintiffs by attempting to collect their claim from the liquidating agent of the New State Bank then and thereby made an election of remedies. The plaintiffs urge two propositions herein: First, the failure of payment by the defendant; second, there was not such an election of remedy as would bar the plaintiffs from maintaining an action against the defendant. An examination of the record shows that a draft would have been sent to the First National Bank of Woodward but for an instruction given by the defendant to send the draft with bill of lading attached to the New State Bank. The evidence does not show that the check given

by the defendant to the New State Bank in order to take up the draft was charged against the account of the defendant at the New State Bank. The following cases sustain the theory that the giving of an unpaid check by the defendant did not constitute payment. Shapleigh Hardware Co. v. Crews, 124 Okla. 247, 255 P. 696; City of Sulphur v. Farmers' National Bank, 101 Okla. 148, 224 P. 518. In the case of the Baker-Evans Grain Company, Appellee, v. Thom Ricord, Appellant, 126 Kan. 107, 267 P. 14, the court said:

"The giving of a check by a debtor for the amount of his indebtedness to the payee is not, in the absence of an express or implied agreement to that effect, a payment or discharge of the debt."

Also in the same case it is said:

"The delivery to a bank of a check on itself, to which bank a draft with bill of lading attached is sent for collection and remittance, does not amount to a payment, although the maker of the check has sufficient funds on deposit with such bank to meet it, if the bank is insolvent and the check is not paid."

On the question of the election of remedy by plaintiffs, the following sections, C. O. S. 1921, provide:

"Section 171. Division of remedies. Remedies in the courts of justice are divided into: First. Actions. Second. Special proceedings.

"Section 172. Action defined. An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense.

"Section 173. Special proceedings. Every other remedy is a special proceeding."

Section 172, supra, fully defines actions. Section 173, supra, does not define special proceedings, but in the following cases a special proceeding is defined to be:

"The term 'special proceeding' is used in the Codes of Practice in many of the states in contradistinction to 'action.' It may be said generally that any proceeding in the court, which was not under the common law and equity practice, either an action at law or a suit in chancery, is a special proceeding." In re Central Irr. Dist., 117 Cal. 382, 49 Pac. 354.

"The phrase 'special proceeding', within its proper definition, is a generic term for all civil remedies in courts of justice which are not ordinary actions. * * * Where the law confers a right and authorizes a special application to a court to enforce it the proceeding is special, within the ordinary meaning of the term 'special proceeding'." Schuster v. Schuster, 84 Minn. 403, 87 N. W. 1014.

"Any ordinary proceedings in a court of justice by which a party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or punishment of a public offense, involving process and pleadings, and ending in a judgment, is an action, while every proceeding other than an action, where remedy is sought by an original application to a court for a judgment or an order, is a special proceeding." Missionary Soc. of M. E. Church v. Ely, 56 Ohio. St. 405, 47 N. E. 587.

A special proceeding is every other remedy than an action, which is "an ordinary proceeding in a court of justice, by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Code Civ. Proc. Cal. secs. 22, 23; In re Joseph's Estate, 118 Cal. 660, 50 P. 768.

The record shows that the plaintiffs presented a claim to the liquidating agent of the New State Bank for the amount represented in the sight draft. The liquidating agent of the bank recognized the claim and paid a substantial amount thereon. He evidently recognized and accepted the check given by the defendant and left at the bank as an assignment of whatever funds that the defendant was entitled to therein. The claim presented to the liquidating agent of the bank and the payment of a part of it by the liquidating agent did not excuse the defendant from the payment of the balance due on the contract. The successful endeavor of the plaintiffs to reduce their claim against the defendant by collecting the major part thereof from the liquidating agent of the bank did not prejudice the defendant. As we understand the election of remedies, in order to relieve one, the person making the election must take an inconsistent proceeding in court to the detriment of another. Here the claimant merely filed a claim with the liquidating agent of the bank. The claim was recognized by the liquidating agent, and, as heretofore stated, a substantial amount was paid thereon. Surely the reduction of the claim against the defendant on account of the collection from the failed bank did not in any manner injure the defendant, and there was no such election of remedies as would preclude the plaintiffs from collecting the balance due on the contract.

In the case of E. G. Rall Grain Co. v. Railroad Co., 94 Kan. 446, 146 P. 1180, it was held that it was the duty of the plaintiffs in that case to reduce the amount of

loss of the defendant as far as possible. In the case of United States Fidelity & Guaranty Co. v. Maxwell, Bank Commissioner (Ark.) 237 S. W. 708, paragraph 5 of the syllabus reads as follows:

"Bank creditor, by presenting its claim to the chancery court for allowance in proceedings, wherein the affairs of the bank were wound up and in which the creditor was allowed the amount of its claim did not elect not to claim the amount in other proceedings."

Also in the case of Rivers v. House (Ark.) 234 S. W. 641, the court states in the syllabus:

"A seller of land was not estopped from suing buyer for unpaid part of purchase price because he presented a claim to receiver of bank on which he had a check for such balance of the purchase money; such act constituting only an effort to collect his money by presenting his check or claim to the proper authorities to make payment of the same."

In the opinion in the case it is said:

"The appellant is not estopped because he presented a claim to the receiver of the First National Bank for the balance of the purchase money due him. That act should be viewed in the light of an effort to collect his money by presenting the check or claim to the proper authorities to make payment of the same. It was not an election by appellant to pursue the bank rather than House. It was to the interest of the appellee House that such claim be made. There is certainly nothing in this to prove that the appellant had recognized the First National Bank as his agent for the collection of the purchase money due him."

The cause is reversed, with directions to the court below to proceed with said cause not inconsistent with the views expressed herein.

HEFNER, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. CLARK, V. C. J., not participating. RILEY, J., absent. SWINDALL, J., disqualified and not participating.

---

On Rehearing.

PER CURIAM. On rehearing it is contended by the defendant in error:

"That the decision is in conflict with a controlling decision to which the attention of the court was not called either in brief or oral argument, to wit: The case of Kansas Flour Mills Company v. New State Bank of Woodward, 124 Okla. 185, 256 P. 43."

An analysis of that decision discloses that that was an action by the Kansas Flour Mills Company against the New State Bank of Woodward, the State Banking Commissioner, and the liquidating agents of the bank. The payee named in the draft involved therein was not a party to the action and the action did not involve the question of the liability of the payee named in the draft. In our opinion there is no conflict between the rule followed in the case at bar and the rule followed in the Kansas Flour Mills Company decision.

LESTER, C. J., and RILEY, ANDREWS, McNEILL, and KORNEGAY, JJ., concur. HEFNER and CULLISON, JJ., dissent. CLARK, V. C. J., and SWINDALL, J., absent.