## CONCHO WASHED SAND CO. et al. v. HUNTSBERGER.

No. 25213.   April 9, 1935.

Albert D. Lynn, for plaintiffs in error.

Simons, McKnight, Simons, Mitchell & McKnight, for defendant in error.

PER CURIAM. This is a proceeding in error from the district court of Major county in an action by defendant in error. J. H. Huntsberger, as plaintiff, against Concho

Washed Sand Company and Concho Sand & Gravel Company, as defendants. We refer to the parties as they appear in the court below.

The material facts involved in this proceeding are disclosed by the first cause of action contained in plaintiff's petition, including the contract between the parties set out as exhibit "A," the demurrer of defendants to said cause of action, and the decision of the trial court overruling said demurrer and rendering judgment for plaintiff in the sum of $582.70, with interest at 6 per cent. per annum from May 1, 1933, and for the further sum of $100 as attorneys fee, and, in addition thereto, appointing a receiver for certain equipment owned by defendants.

Among other averments, it is alleged in the first count of plaintiff's petition that:

"* * * On the 16th day of March, 1929, he entered into a written contract with the defendant Concho Washed Sand Company for the purpose of mining and operating for sand and gravel, for laying pipe lines, railroad tracks, power stations and structures, to produce, save and take care of said products on the following described land in Major county, Okla., * * * that under the terms of said contract the Concho Washed Sand Company agreed to pay to plaintiff a royalty of four cents (4c) per cubic yard on all sand and gravel or either of them produced on said land. Second, party agreed further to pay a minimum royalty each year of $600 whether sand and gravel was produced thereon in sufficient quantities to amount of said sum or not. * * * That said royalty was to be computed and paid quarterly on July 1st, October 1st, January 1st, and April 1st of each year."

That under the terms of said contract plaintiff acquired a lien on all machinery and equipment located on said premises as security for the payment of royalties falling due thereunder, and that defendants should not have the right to remove the machinery and other equipment from the above-described land until all past due royalties were paid; that on April 1, 1933, defendants became indebted to plaintiff by reason of the mining and removal of sand and gravel from said leased premises in the sum of $582.70, and that on said date the defendant Concho Washed Sand Company executed and delivered to plaintiff its check drawn on the First National Bank & Trust Company of Oklahoma City for said sum, and shortly thereafter, and before plaintiff could present the check for payment to the bank on which it was drawn, payment was stopped by order of said defendant.

Plaintiff further avers that he has been unable to collect said amount or any part thereof, "but has retained said check for the purpose only of evidencing the defendants' acknowledgment of the amount due," and that by reason of such nonpayment "plaintiff is entitled to a foreclosure of his lien on all of the machinery fixtures and equipment used in the mining of sand and gravel on said lease." In subsequent averments, plaintiff describes the machinery and other equipment and claims that, by reason of said nonpayment, he is entitled to the appointment of a receiver to take charge of same as provided in the contract referred to, and then prays for judgment for said sum of $582.70, with interest and attorneys fees, for foreclosure of his lien on said described property, and for the sale thereof as provided by law; also, for a receiver for said property pending the final determination of the action.

The contract between plaintiff and Concho Washed Sand Company attached to plaintiff's first cause of action as exhibit "A" and executed on March 16, 1929, after specifying the work to be done by said company, royalty to be paid, and describing the tract of land on which the mining operations were to be performed, further provides that:

"A lien is hereby granted the party of the first part on all machinery and equipment for the full payment of all royalty due. Party of the second part shall have the right at any time should he find it impossible to operate to remove all machinery and fixtures and tracks from said land after payment of all royalties that are due. Second party agrees to start construction of sand plant within a period of 90 days from this date. In payment all royalty shall be paid by check to the first party or deposited to the party of the first part's credit in the First National Bank of Hennessey, Okla., or its successors, which shall continue as a depository regardless of change of ownership of said land. In the event of the discontinuance of said bank, said royalty may be deposited in any bank selected by party of the second part, and notice of such deposit given party of the first part by mail at time of making such deposit."

The entire controversy between the respective parties hereto is hinged on the interpretation to be given the following provision:

"In payment all royalty shall be paid by check to the first party or deposited to the party of the first part's credit in the First National Bank of Hennessey, Oklahoma"

—counsel for defendant claiming that the

execution and delivery of the check for the $582.70, admitted to have been due from defendant to plaintiff on April 1, 1933, constituted a payment of said indebtedness, notwithstanding the fact that the drawer of said check itself stopped payment thereof.

In support of this contention, he cites the following Oklahoma cases: Wheeler & Motter Merc. Co. v. Kitchen, 67 Okla. 131, 169 P, 877; Dungan v. Jesko, 118 Okla. 217, 246 P. 1094; Aetna Life Ins. Co. v. Eakins, 143 Okla. 52, 287 P. 402; Harryman v. Bowlin, 153 Okla. 202, 4 P. (2d) 1011.

It is admitted by counsel that none of these cases are squarely in point, but he claims that, by implication, they tend to support his contention. We cannot agree that any of said cases, even by implication, supports his contention. For instance, in the opinion in Wheeler & Motter Merc. Co. v. Kitchen, supra, it is said in part that:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not l'able to the holder unless and until it accepts or certifies the check (Rev. Laws 1910, sec. 4239) and, until presented and paid, or accepted or certified by the bank, is revocable by the drawer, who has the legal control of the moneys to his credit."

In Harryman v. Bowlin, supra, it is held that:

"Where a shipper at the request of a buyer sends a b'll of lading with draft attached to a certain bank and the buyer delivered a check to the said bank in which the buyer has deposits and before the shipper receives his money the bank fails and he then files a claim with the liquidating agent of the bank and a part of the claim is paid from the deposits of said buyer, leaving a balance due the shipper, held, the filing of such claim with the liquidating agent is not such an election of remedy as will preclude the shipper from maintaining an action against the buyer for balance due upon the contract."

It is evident that the provision of the contract for payment by check apparently on any bank or, at the option of defendant, by deposit to the credit of plaintiff in the First National Bank of Hennessey, was placed therein for the convenience of the defendant, and should, therefore, be construed strongly against it. New State Oil & Gas Co. v. Dunn, 75 Okla. 141, 182 P. 514. Furthermore, we do not believe that either of the parties at the time of the execution of said contract contemplated that, by said provision, the giving by defendant and acceptance by plaintiff of a worthless check would constitute an absolute payment of the debt for which such check was given, and none of the cases cited by defendant go to the extent of so holding. It is admitted that the general rule uniformly adhered to by this court is correctly stated in Wheeler & Motter Merc. Co. v. Kitchen, supra, as follows:

"A check without regard to whether that of the debtor or a third person does not constitute payment unless it is agreed that it shall be taken as an absolute payment."

Cook & Bernheimer Co. v. Hagedorn (Ind.) 131 N. E. 788, cited in support of defendants' contention, while hold'ng that, "If a check, given and received by agreement of the parties as payment of the debt is not paid, the right of action is on the check, and not on the indebtedness for which it is given," bases same on the fact that the holder thereof "not only received the check in question in the first instance, but retained it, notwithstanding payment of the same had been stopped, and instituted this action to enforce its collection." It is thus seen that the party receiving such check not only retained it, but made h's election to sue thereon instead of on the debt for which it was given. In the op'nion, Sutton v. Baldwin (Ind.) 45 N. E. 518, is cited with approval, but the facts in the latter case clearly distinguish it from the one at bar. There the appellee was the highest bidder for a certain tract of land at sheriff's sale. Immediately before the sheriff's deed was delivered to him, he stated to the sheriff that he claimed $900 of the $3,741 so bid, as junior incumbrancer of the land, and that he was about to commence a suit against him to enjoin the payment of said $900 to appellant, and refused to deliver the check for $3,741 to the sher'ff unless the latter would agree to hold it until 10:30 a. m., the following day, so that the suit might be filed; that the sheriff agreed to do this and the appellee gave him his check for $3,741 payable to Charles W. Homburg or order. The sheriff did not hold the check as he promised, but indorsed and transferred it to the attorney for appellant, who paid the sheriff's fees and costs with his own personal check. Appellee stopped payment on the check, which was still outstanding at the time of suit. The court held that the acceptance of the check by the appellant under those circumstances canceled the debt for which it was given. The opinion reads in part as follows:

"The facts found by the court show that appellant, besides receiving the check as a payment, had by his conduct ratified the

acts and agreement of the sheriff in receiving said check in payment. * * * If appellant had offered to rescind the contract, and tendered back the check, when payment thereof was refused, a different question would be presented: but no such steps were taken. On the contrary, retaining a check which he received as a payment of the judgment, and without any offer to rescind the agreement under which it was received, he seeks to avail himself of the summary remedy provided by section 772 (section 760), supra."

It is further said therein that:

"The record shows that, during the progress of the trial, 'appellee paid into court' the amount of his bid, with interest, for the use of appellant, in lieu of the check of appellee, upon appellant surrendering said check to the clerk of the court,—the money and check to be held by the clerk subject to the further order of the court; the money to be returned to said appellee by the clerk under the order of the court if the check was not surrendered to the clerk within a reasonable time to be fixed by the court. The check was not surrendered to the clerk, and afterwards, on order of court, the amount paid by appellee into court was repaid to him. There was no error in this order of the court."

In Conde v. Dreisam Gold Mining Co. (Cal.) 86 P. 825, also cited by defendant, it is held in part that:

"Where the maker of a note forwarded a draft for the amount due thereon, which was received and retained by the payee's general agent without any notice that the draft would not be accepted in payment, the retention of the draft operated as payment of the note."

The facts show that the draft therein referred to was for the amount of the debt owing to the payee and was at all times collectible, but that said payee, after accepting the draft and retaining it for a long period of time without presenting it for payment to the bank on which it was drawn, for her own advantage, claimed that same did not constitute a payment of the debt and sought to enforce collection of a note put up as collateral security therefor. The opinion of the court on this point reads in part as follows:

"When this action was brought the Moulton note was past due, and the draft in Mrs. Moulton's hands was available to pay it, and had been for five months. Mr. Healey brought it into court and after the trial obtained leave to withdraw it, indicating that he then, as well as theretofore, expected to make use of it for payment in his own time. Inasmuch as he refused to explain why he retained the draft, or why he did not notify the Condes or Rogers of his unwillingness to accept it as payment, we can only surmise that he wanted the note to run the full year for Mrs. Moulton's benefit, as he regarded the loan as a safe and good one for her. Under all the facts and circumstances disclosed, we think that the draft constituted a payment, and that the court was justified in finding that the Moulton note was fully paid. If the drawer and drawee of the draft should fail before its presentation, after so great a lapse of time, it would hardly be contended that Mrs. Moulton could come back upon the Condes."

For the reason stated, we are of the opinion that the provision of the contract relied upon by plaintiffs in error does not change the general rule declaring that the giving and acceptance of a check for the amount of a specified indebtedness does not constitute absolute, but only a conditional, payment thereof. Certainly, such general rule should prevail where the drawer of the check, by his own order, prevents actual payment thereof.

The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. R. Keaton, W. A. Lybrand, and Eugene Jordan in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Keaton and approved by Mr. Lybrand and Mr. Jordan, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.