### KIMBREL et al. v. LONG.

No. 26447. Dec. 8, 1936.

Rehearing Denied March 9, 1937.

H. A. Johnson, for plaintiffs in error.

H. E. St. Clair, for defendant in error.

PER CURIAM. This action was commenced in the district court of Noble county, defendant in error, plaintiff below, having on the 13th day of July, 1934, filed his petition, wherein it was alleged that plaintiff had sold and delivered to said defendants certain goods and merchandise, consisting of a casket for the body of Stella Allen, deceased, one grave vault and services, in the total sum of $325; that the said Stella Allen was the mother of said Mabel Kimbrel, and that said defendants agreed to pay for such goods and services; that of said sum $100 had been paid, and there was owing and unpaid thereon a balance of $225, with interest from and after the 16th day of January, 1933, at the rate of 6 per cent. per annum.

The defendant Mabel Kimbrel, in her answer, after general denial, alleges that "she at no time promised to pay said claim of plaintiff out of her personal property, but it was agreed at the time that said plaintiff was to be paid out of the estate of said Stella Allen, deceased." "That this defendant has not in writing or otherwise agreed to pay said claim or any part thereof out of her personal estate." "That plaintiff has filed his claim under oath that said estate owes him the amount of his bill, and that he is estopped from claiming the same or any part thereof from this defendant."

The defendant Lee Kimbrel filed separate answer, wherein he denies each and every material allegation in plaintiff's petition.

Trial by jury resulted in a verdict for defendant in error.

The facts as shown by the record may be summarized as follows:

On or about the 16th day of January, 1933, Stella Allen, the mother of Mabel Kimbrel, was found dead at her residence in the town of Billings, and at the request of the coroner the plaintiff took charge of the body of said decedent and removed it to his undertaking parlors. Later the defendants visited the place of business of plaintiff on two or more occasions in an effort to arrange for burial supplies, it being finally decided that plaintiff would secure a certain casket from another undertaker and would arrange for the funeral of the deceased, and concerning which transaction plaintiff below testified as follows:

"I told them it would be necessary for me to get my money and it would take a long time to get it out of the estate and I was not able to carry the bill and look to the estate for it. * * * That I would have to make arrangements for my money, and he said he would talk with Mrs. Kimbrel and came back and said they would raise the money in ten days and not to exceed thirty days. * * * I told her the same thing I told Mr. Kimbrel—that I couldn't carry the account. I wasn't able to carry the bill. She made the same statement Mr. Kimbrel had—they could get the money in ten days and not to exceed thirty days. So we went ahead with the funeral. Q. That it was to be paid by them in ten days? A. Yes; and not to exceed thirty. Q. In your talk with them, was it your understanding they were—you were looking to them individually? A. That was the understanding. I gave them to understand I could not accept the estate because I knew it would be a long time before it could be settled and I wasn't able to carry the account and I was looking to them for my pay."

The court instructed the jury, which appears to have been given without exception, as follows:

"You are instructed that if you find from a preponderance of the evidence that the plaintiff sold the defendants Lee Kimbrel and Mabel Kimbrel the merchandise stated in plaintiff's petition; that the defendants agreed to pay for the same, as alleged in the petition, and that there is a balance of $225 due thereon, and that the defendants failed, neglected and refused to pay the same, then your verdict should be in favor of the plaintiff and against the defendants and each of them in the sum of $225, with interest at six per cent. from the 28th day of April, 1934, until paid, otherwise your verdict should be for the defendants."

This court in numerous cases has held that where a party orally promises to pay for goods furnished to or for another, if the parol contract creates an original liability on the part of the promisor and credit is extended solely to him, it does not fall within the statute of frauds. Smith v. Morton, 70 Okla. 157, 173 P. 520; Byrd v. Woods, 77 Okla. 236, 188 P. 337; Snodgrass v. Lamunyon, 94 Okla. 151, 221 P. 46. And the question whether a verbal promise to pay is original or collateral may be determined not only

by the form of expression used by the negotiations had, but also upon the situation or relation of the parties.

In the case of Byrd v. Woods, supra, this court quoted from Mr. Justice Brewer in Davis v. Patrick, 141 U. S. 479, as follows:

"The real character of a promise does not depend altogether upon the form of expression, but largely upon the situation of the parties, and the question always is what the parties mutually understood by the language, whether they understood it to be a collateral or a direct promise."

The court having submitted the issue directly to the jury as to the primary liability of the defendants, and there being evidence to support the verdict of the jury, such verdict may not be disturbed by this court.

It is further contended that defendant in error had elected his remedy by filing his claim in the estate of Stella Allen, deceased, and that he is thereby estopped to bring this suit on the same cause of action.

Touching this assignment, this evidence appears in the record:

"Q. Now, before that $100 was paid that you referred to there, you had filed this claim with the administratrix in this case? A. Yes, sir, I had. Q. How did you come to file that claim with the estate? A. I had refused to file a claim and Mr. Johnson asked me— he asked me to file a claim on the estate. He said there was some property and some wheat in the elevator at Red Rock and that there was some other property that had to be sold, but couldn't be sold in the estate until a claim was filed in the estate allowing them to ask for a sale of this property. * * * I did file the claim with the understanding it wouldn't relieve them. With the understanding it wouldn't relieve the other parties personally, but as a convenience to the estate so they could go ahead and ask for the sale of this property. * * * They asked me to and I filed the claim thinking it wouldn't relieve the other parties."

We do not deem it necessary to enter into a lengthy discussion as to what constitutes and the effect of an election of remedies.

But we think the contention of plaintiffs in error is answered by this court in Cotner v. Lon Jacobs Grocery Co., 84 Okla. 1, 202 P. 997, where it is said:

"We do not think, however, that the question of inconsistent remedies is what is involved in this case. The real question that is involved is the question of having two or more different parties liable for the same debt, or one or two parties jointly liable in an individual capacity, and a claim in the nature of an equitable claim to subject the estate in the control of a probate court to the satisfaction of the same claim for which the individuals are sought to be held, and there is no reason why both could not be held liable, and the claimant would have a right to exhaust as against all of them until he had procured full satisfaction of his claim. This, we think, is what is involved in this case, and is not a question of inconsistent remedies.

"The theory of inconsistent remedies is where you have two remedies against the same party, and where you pursue that party on one remedy, and then afterwards undertake to exhaust against the same party by another remedy, and the plea of election is brought to abate the second action, based upon the contention that there had already been an election on a remedy that is held in law to be inconsistent with the first remedy sought to be enforced."

Undoubtedly, under the provisions of statute, the estate of decedent was liable for burial supplies furnished, but there is evidence supporting the finding of the jury that the plaintiffs in error were original promisors.

This court in Harryman v. Bowlin, 153 Okla. 202, 4 P. (2d) 1011, quotes from the case of U. S. Fidelity & Guaranty Co. v. Maxwell, Bank Com'r, 152 Ark. 64, as follows:

"Bank creditor by presenting its claim to the chancery court for allowance in proceedings wherein the affairs of the bank were wound up and in which the claimant was allowed the amount of its claim, did not elect not to claim the amount in other proceedings."

See other cases cited in Harryman v. Bowlin, supra.

We do not observe any inconsistency in the remedies sought or action taken by the defendant in error. The judgment of the trial court is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys Frank M. Bailey and T. H. Williams, Jr., in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Frank M. Bailey and approved by Mr. T. H. Williams, Jr., the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.