251 F.2d 476
 Mark GANNON, Appellant,
v.
AMERICAN AIRLINES, Inc., a Delaware corporation; Associated Aviation Underwriters; W. R. Britton, Carroll Britton; McBride Bone & Joint Clinic and Dowell, Inc., Appellees.
Carroll BRITTON, Appellant,
v.
AMERICAN AIRLINES, Inc., a Delaware corporation, Associated Aviation Underwriters, W. R. Britton, McBride Bone & Joint Clinic, Mark Gannon and Dowell, Inc., Appellees.
McBRIDE BONE & JOINT CLINIC, a partnership, and Bone & Joint Hospital, a corporation, Appellants,
v.
AMERICAN AIRLINES, Inc., a Delaware corporation, Associated Aviation Underwriters, W. R. Britton, Carroll Britton, Mark Gannon and Dowell, Inc., Appellees.
DOWELL, Inc., Appellant,
v.
AMERICAN AIRLINES, Inc., a Delaware corporation, Associated Aviation Underwriters, W. R. Britton, McBride Bone & Joint Clinic, Carroll Britton, and Mark Gannon, Appellees.
 No. 5452.
 No. 5479.
 No. 5480.
 No. 5481.
 United States Court of Appeals Tenth Circuit.
 July 3, 1957.
 Judgment January 2, 1958.
 
 COPYRIGHT MATERIAL OMITTED Rex H. Holden, Oklahoma City, Okl. (C. L. McArthur and Hobert G. Orton, Ada, Okl., and Stewart & Lytton, East Moline, Ill., on the brief), for appellant Gannon.
 Austin R. Deaton, Jr., Ada, Okl. (Busby, Stanfield, Deaton & West, Ada, Okl., on the brief), for appellants Carroll Britton, McBride Bone & Joint Clinic, and Bone & Joint Hospital.
 Solon W. Smith, Oklahoma City, Okl. (W. D. Hart, Pauls Valley, Okl., William J. Crowe, and Hal D. Leaming, Oklahoma City, Okl., on the brief), for appellant Dowell, Inc.
 Luther Bohanon, Oklahoma City, Okl. (Bohanon & Barefoot, Oklahoma City, Okl., on the brief), for appellee W. R. Britton.
 Fred M. Mock, Oklahoma City, Okl. (Pierce, Mock & Duncan, Oklahoma City, Okl., on the brief), for appellees American Airlines, Inc., Fidelity & Casualty Co. of New York, and Associated Aviation Underwriters.
 Before BRATTON, Chief Judge, and PICKETT and LEWIS, Circuit Judges.
 BRATTON, Chief Judge.
 
 
 1
 These several appeals were perfected from a judgment entered in an interpleader action. American Airlines, Inc., hereinafter referred to as American, instituted the action against W. R. Britton, hereinafter referred to as Britton, Carroll Britton, wife of W. R. Britton, Mark Gannon, hereinafter referred to as Gannon, and McBride Bone & Joint Clinic, hereinafter referred to as Clinic, to determine conflicting claims to a fund deposited in the registry of the court contemporaneously with the institution of the action. Fidelity and Casualty Company, hereinafter referred to as Fidelity, and Associated Aviation Underwriters, hereinafter referred to as Underwriters, were subsequently made parties; though not made a party, Bone & Joint Hospital, hereinafter referred to as Hospital, joined Clinic in interposing a joint answer; and Dowell, Inc., hereinafter referred to as Dowell, intervened.
 
 
 2
 The conflicting claims to the fund in the registry of the court arose out of these facts. Britton was injured while a passenger on an airplane owned and operated by American. Fidelity was the insurance carrier for American. Acting for Fidelity, Underwriters issued the policy which provided among other things that the insurer should defend in the name and on behalf of the insured any claims or suits against the insured; that the insurer should have the right to settle any claim or suit at its own cost; and that the insurer should pay, within certain limits, losses imposed upon or assumed by the insured as the result of specified accidents. Britton brought a suit against American in the United States Court for Western Oklahoma to recover damages for his personal injuries. Acting in the name and on behalf of American, Underwriters took charge of the defense of the action. An agreement was reached to settle the case upon the basis of payment to Britton in the sum of $91,000. Underwriters issued its check for $91,000. The check was dated January 25, 1956, was drawn on the National City Bank of New York, and was payable to Britton, Carroll Britton, Orel Busby, and Truman B. Rucker. Busby and Rucker were attorneys for Britton in the case being settled. Under date of January 25, Britton and Carroll Britton executed a full and final release covering all claims or rights of action of every description for the injuries, losses, or damages resulting from Britton's injuries. Busby and Rucker signed the release as witnesses. The release recited payment of $91,000 by American, receipt of which was acknowledged. On January 25, a stipulation was filed in the case. It was signed by Britton, Carroll Britton, Busby, Rucker, and American. It was stipulated that a full, final, and complete settlement had been reached between the parties in the sum of $91,000; that the settlement included any and all claims that Carroll Britton might then or thereafter have growing out of the injuries to her husband; and that the cause should be dismissed with prejudice. And on January 25, an order of dismissal was entered in the case, based upon the stipulation. On the morning of January 26, the check was endorsed by the named payees and deposited for collection in a bank in Oklahoma City. Gannon held an unpaid judgment against Britton. The judgment was rendered by the Circuit Court of Fayette County, Illinois, on October 20, 1951, was for the sum of $18,000, and bore interest at the rate of five per cent per annum. Gannon instituted in the state court in Oklahoma an action to recover a domestic judgment upon the foreign judgment rendered in Illinois. Britton pleaded that the foreign judgment was tainted with fraud. The court in Oklahoma entered judgment for Gannon. On appeal, the judgment was reversed on account of the exclusion of certain tendered evidence. Britton v. Gannon, Okl., 285 P.2d 407, certiorari denied, 350 U.S. 886, 76 S.Ct. 140, 100 L. Ed. 781. The cause was remanded and is still pending in the district court. About two hours after the check for $91,000 had been delivered to the payees in Oklahoma City, Gannon obtained from the Superior Court of Cook County, Illinois, a citation in the nature of a garnishment against American and caused it to be served promptly upon American in Illinois. The basis of the process in the nature of a garnishment was the unsatisfied judgment which Gannon owned. The process in the nature of garnishment commanded American to appear and attend a hearing at a fixed time and place for examination concerning money or property of Britton held by American; prohibited American from making disposition of any such money or property not exempt from execution or garnishment, until the further order of the court; and provided that American was not required to withhold payment of money beyond double the amount of the judgment against Britton. American advised Underwriters of the service of the process, and Underwriters caused the check to be returned unpaid.
 
 
 3
 After the return of the check, an agreement was entered into in which it was agreed that $61,000 should be paid to Britton; that an interpleader action should be instituted; and that $30,000 should be deposited in the registry of the court in such action. Underwriters paid the $61,000 to Britton; this action was instituted in the name of American; and $30,000 furnished by Underwriters was deposited in the registry of the court. It was pleaded in the complaint that American had caused the $61,000 to be paid; that it had retained the $30,000 as stakeholder; that a controversy existed between Britton, Carroll Britton, Gannon, and Hospital concerning their respective rights in the fund being retained; and that American could not determine without danger to whom various payments should be made out of such fund. Upon the institution of the action and the making of the deposit in the registry of the court, an order was entered in the action restraining Gannon from proceeding further with the garnishment proceeding pending in the court in Illinois; restraining Gannon from commencing or instituting any other action designed to recover or in any manner affect the fund in the registry of the court; and restraining Britton, Carroll Britton, and Clinic from commencing or instituting any action designed to recover all or any part of the fund in the registry of the court.
 
 
 4
 Gannon pleaded rights in the fund under his unpaid judgment and the citation in the nature of garnishment served upon American. Britton and Carroll Britton pleaded that they entered into an agreement to divide equally the proceeds of the settlement. Clinic and Hospital asserted rights under an alleged verbal agreement with Britton in which he assigned to them such portion of any money which became due him from American necessary to cover medical and hospital services rendered to Britton. And Dowell asserted rights in the fund under an unpaid judgment against Britton upon which garnishment was issued and served. The judgment upon which Dowell relied was rendered by the United States Court for Eastern Oklahoma, was for $18,662.10, together with attorneys' fees in the sum of $1,981.29, and bore interest at the rate of six per cent per annum. After its intervention in this cause, Dowell instituted in the court for Eastern Oklahoma, garnishment proceedings against American and Fidelity for the enforcement of its unpaid judgment against Britton. On appeal, the judgment against Britton was vacated and the cause was remanded for a single specified purpose. Britton v. Dowell, Inc., 10 Cir., 237 F.2d 630. On remand, the court again entered judgment against Britton; and on appeal, the judgment was affirmed. Britton v. Dowell, 10 Cir., 243 F.2d 434. Britton and Carroll Britton employed the law firm of Bohanon and Barefoot to represent them as counsel in this case on a contingent basis of fifty per cent; and there was appended to the answer on behalf of Britton and Carroll Britton a footnote signed by the attorneys stating that an attorneys' lien was claimed.
 
 
 5
 In its judgment, the court awarded to Bohanon and Barefoot as attorneys' fees protected by attorneys' lien one half of the sum deposited in the registry of the court and directed payment accordingly; awarded in effect the remainder of the fund to Dowell, to be credited upon its judgment against Britton; and severally denied the claims of Gannon, Carroll Britton, Clinic, and Hospital. Gannon, Carroll Britton, Clinic, Hospital, and Dowell appealed.
 
 
 6
 One of the parties challenges the jurisdiction of the court to entertain the action. It is argued that the sum deposited in the registry of the court did not meet the statutory requirement and that therefore the court erred in assuming jurisdiction and in refusing to dismiss the action. Another party contends that the court erred in refusing to require the deposit of an additional sum in the registry of the court. In presently pertinent part, it is provided by statute that the district court shall have original jurisdiction of an action in interpleader or in the nature of interpleader filed by a corporation having in its custody or possession money or property of the value of $500 or more, if two or more adverse claimants of diverse citizenships are claiming or may claim to be entitled to such money or property, and if plaintiff has deposited such money or property in the registry of the court, there to abide the judgment of the court, or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court in respect to the subject matter of the controversy, 28 U.S.C.A. § 1335. It is clear that under the plain terms of the statute the making of the deposit or the giving of the bond is a condition precedent to the acquisition of jurisdiction in an action in the nature of interpleader; and that when rival claims for a sum of money only are involved, payment of the entire sum into the registry of the court or the giving of a bond meeting the requirements of the statute is a condition precedent to the jurisdiction of the court. Edner v. Massachusetts Mutual Life Insurance Co., 3 Cir., 138 F.2d 327; Austin v. Texas-Ohio Gas Co., 5 Cir., 218 F.2d 739; New York Life Insurance Co. v. Lee, 9 Cir., 232 F.2d 811. At the time of the institution of this action, American had notice of only two claims against a debt or obligation due Britton. One was the claim of Gannon in the sum of $18,000, with accrued interest; and the other was the claim of Clinic in the approximate amount of $2,500, with accrued interest. The sum deposited in the registry of the court exceeded the two claims in the aggregate and therefore met in full measure the requirement of the statute in respect to amount. Whether the court should have required the making of an additional deposit after the assertion of the claim of Dowell was a question resting in the sound judicial discretion of the court; and no abuse of such discretion appears.
 
 
 7
 Venue in the court in the Western District of Oklahoma is challenged upon the ground that there was not a claimant in that district having a valid bona fide claim to any part of the fund. It is provided by statute, 28 U.S.C.A. § 1397, that an action of interpleader may be brought in the judicial district in which one or more of the claimants reside. It was alleged in the complaint that American was a corporation organized and existing under the laws of Delaware, with its principal place of business in New York; that Britton and Carroll Britton were citizens of Oklahoma; that Gannon was a citizen of Illinois; that Clinic was a co-partnership with its place of business in the Western District of Oklahoma; and that the matter in controversy exceeded $3,000, exclusive of interest and costs. There was diversity of citizenship. Rossetti v. Hill, 9 Cir., 162 F.2d 892, 172 A.L.R. 821. One of the defendants maintained its principal place of business in the Western District of Oklahoma. And the requisite amount was in controversy, exclusive of interest and costs. The trial demonstrated to the satisfaction of the court that the claim of Clinic — the defendant domiciled in the Western District of Oklahoma — was not well founded in law. But that went to the merits of the claim, not to venue. It is not essential to venue in a case of this kind that a claim not patently baseless on its face be such as can be finally sustained in court. Compare, Hunter v. Federal Life Insurance Co., 8 Cir., 111 F. 2d 551; John Hancock Mutual Life Insurance Co. v. Beardslee, 7 Cir., 216 F. 2d 457, certiorari denied, 348 U.S. 964, 75 S.Ct. 523, 99 L.Ed. 751. And since the claim of Clinic did not disclose upon its face that it was patently baseless the challenge to venue cannot be sustained.
 
 
 8
 Rule of Civil Procedure 73(b), 28 U.S.C.A., provides in presently pertinent part that the notice of appeal "shall designate the judgment or part thereof appealed from * * *." The provision in the rule constitutes a mandatory requirement and the jurisdiction of this court on appeal is limited to the review of the judgment or portion thereof designated. Long v. Union Pacific Railroad Co., 10 Cir., 206 F.2d 829. The notice of appeal of Carroll Britton, and the joint notice of appeal of Clinic and Hospital, each stated that an appeal was taken "from the final judgment rendered herein in favor of Dowell, Inc., defendant herein, on the 6th day of June, 1956." Neither notice stated that an appeal was taken generally from the judgment or from the provision therein denying the claim of the appealing party or parties, respectively. Neither notice indicated directly or indirectly an intention to challenge and have reviewed on appeal the provision denying the claim presented by the appealing party or parties. Both indicated an intention to challenge and have reviewed only the provision in the judgment allowing the claim of Dowell. The notices of appeal did not operate to bring here for review the judgment as a whole or the provisions therein denying the claims of Carroll Britton and of Clinic and Hospital, respectively. Those provisions in the judgment have become final. And their claims having been rejected with judicial finality, Carroll Britton and Clinic and Hospital do not have any present cognizable economic or legal interest in the fund and therefore cannot be heard to contend on appeal that they are aggrieved by the action of the court in awarding a portion of such fund to Dowell. Mount Vernon Savings Bank v. Wardman, 84 U.S.App.D.C. 343, 173 F.2d 648; Cramp Shipbuilding Co. v. United States, 3 Cir., 195 F.2d 848; De Korwin v. First National Bank of Chicago, 7 Cir., 235 F.2d 156.
 
 
 9
 Gannon held an unsatisfied final judgment against Britton rendered in the state court in Illinois. In their joint answer in this case, Britton and Carroll Britton challenged the effectiveness of the garnishment lien upon the ground that the judgment entered in the court in Illinois was tainted with fraud. But the court in Illinois had jurisdiction of the subject matter of the action and of the parties. And therefore the judgment entered in that court was not open to collateral attack in this proceeding upon the ground of fraud not going to the jurisdiction of the court. Gannon instituted in the state court in Oklahoma the action to recover a domestic judgment upon the foreign judgment rendered in Illinois, and in such action Britton pleaded that the judgment entered in the court in Illinois was tainted with fraud; but no judgment has been entered in that action annulling or setting aside the judgment rendered in Illinois. The judgment entered in the court in Illinois is still in force and effect. And the full faith and credit clause, together with legislation pursuant thereto, applies to judicial proceedings in a state court when drawn in question in an independent proceeding in a federal court. Mills v. Duryee, 7 Cranch 481, 485, 3 L.Ed. 411; Mutual Life Insurance Co. v. Harris, 97 U.S. 331, 336, 24 L.Ed. 959; American Surety Co. v. Baldwin, 287 U. S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231.
 
 
 10
 With certain exceptions not having any present material bearing, service of the garnishment issued out of the court in Illinois operated under the law of that state to sequester any debt or obligation which American owed to Britton and to vest in Gannon effective from the date of such service a paramount right in such debt or obligation superior in equity to subsequently created rights. And such garnishment lien was entitled to full faith and credit when asserted in this action as a claim against the fund in the registry of the court. Armour Fertilizer Works v. Sanders, 5 Cir., 63 F.2d 902, affirmed, 292 U.S. 190, 54 S.Ct. 677, 78 L. Ed. 1206.
 
 
 11
 But the question whether American was legally indebted or liable to Britton at the time of the service of the garnishment was one to be determined by the facts and circumstances. In other words whether there was a corpus in the nature of a legal debt or liability of American to Britton at the time of the service of the garnishment depended upon the facts and circumstances. Acting pursuant to the authority given in the contract of insurance, Underwriters conducted in the name and on behalf of American the defense of the suit brought against American for damages sustained by Britton; it conducted the negotiations for the settlement; it effected the settlement; and it issued the check delivered in carrying out the terms of the settlement. But throughout it was acting in connection with a liability being asserted against American. As between American and Underwriters, it was the obligation of the latter to defend the action. As between American and Underwriters, it was the province of the latter to effect the settlement at its own cost. And as between American and Underwriters, it was the obligation of the latter when the settlement was effectuated to pay the $91,000. But as between American and Britton, when the settlement was agreed upon, when the stipulation was filed in the case stating that settlement had been effectuated on the basis of payment to Britton in the sum of $91,000 and further stating that the parties agreed upon the dismissal of the action with prejudice, and when the action was dismissed pursuant to such stipulation, all considered in their composite effect, American became legally liable to Britton in the liquidated sum of $91,000. The check of Underwriters was issued and delivered in settlement of the liquidated liability to Britton. But in the absence of a special agreement otherwise, the mere giving and acceptance of the check did not operate to extinguish the debt or obligation for which it was given. Wheeler & Motter Mercantile Co. v. Kitchen, 67 Okl. 131, 169 P. 877, L.R.A.1918C, 160; Shapleigh Hardware Co. v. Crews, 124 Okl. 247, 255 P. 696; Harryman v. Bowlin, 153 Okl. 202, 4 P.2d 1011; Concho Washed Sand Co. v. Huntsberger, 171 Okl. 486, 43 P.2d 120; Liberty National Bank of Weatherford v. Simpson, 187 Okl. 274, 102 P.2d 844. The check not being honored when presented for payment, the liability of American to Britton in the sum of $91,000 continued until the $61,000 was paid to Britton and the $30,000 was deposited in the registry of the court. Moreover, even though it could be said that, upon the effectuating of the settlement and the giving of the check for $91,000, Underwriters alone became liable to Britton in that amount, and that American bore no liability arising out of the settlement, the subsequent acts and conduct on the part of American amounted to ratification and adoption of the settlement and such ratification and adoption would operate to render American liable to Britton for the liquidated sum of $91,000, effective from the time of the settlement and the dismissal of the action for damages. Accordingly, American was legally liable to Britton at the time of the service of the garnishment and the garnishment operated to impose a lien upon such liability. And inasmuch as the fund deposited in the registry of the court represented payment in part of such liability, the lien imposed by the garnishment reached the fund effective from the date of its deposit.
 
 
 12
 It is the law in Oklahoma that an attorney shall have a lien on a judgment obtained for payment of his services; and that he may make such lien effective by endorsement of the claim upon a petition or other like pleading filed in the case, by giving written notice to the adverse party, or by entering or causing to be entered a lien claim in the judgment docket opposite the entry of the judgment; and that this may be done at any time before the rights of third persons intervene. Cherry v. Erwin & Erwin, 173 Okl. 511, 49 P.2d 788; Widick v. Phillips Petroleum Co., 180 Okl. 432, 70 P.2d 474. The effect of the verbal agreement between Britton and his attorneys was that the attorneys should receive for their professional services in the case one half of the fund remaining in the registry of the court after disposition had been made of the claims then being asserted against such fund. The claims then being asserted were those of Gannon, Clinic, and Carroll Britton. Dowell was not named as a party defendant at the institution of the action; it was not a party at the time the fund was deposited in the registry of the court; and it had not asserted any right in the fund at the time the attorneys were employed on a contingent basis and gave effective notice of their lien by the endorsement or notation at the bottom of the answer filed for Britton and Carroll Britton. Since Gannon had an effective prior equitable right in the fund, and since the claims of Clinic and Carroll Britton were subsequently denied, the lien of the attorneys attached to one half of the fund remaining in the court over and above the amount due Gannon upon his judgment, and such lien of the attorneys was prior in right to that of Dowell.
 
 
 13
 Dowell did not have a judgment against Britton at the time of the institution of this action and at the time the deposit was made in the registry of the court. It was after the institution of the action and the making of the deposit that Dowell obtained its judgment and caused a writ of garnishment thereon to be served upon American. While the original judgment was vacated on appeal and the cause was remanded for the single purpose of permitting the trial court to determine whether a certain tax had been paid which was a prerequisite under state law to the right to maintain the action, upon remand it was determined that the tax had been paid and the second judgment was entered. In a strictly technical sense, the two judgments were separate; but the second was in reality a mere re-entry of the first and it should be treated in that manner. Therefore, Dowell's garnishment was predicated upon a judgment which is still in effect and its service operated to create an equitable lien upon the fund in the registry of the court, effective from the time of the service of the garnishment upon American. But such lien was subordinate in point of priority to that of Gannon and that of the attorneys.
 
 
 14
 In respect to the denial of the claims of Carroll Britton and of Clinic and Hospital, respectively, the judgment is affirmed. In other respects, the judgment is reversed and the cause is remanded with directions to enter judgment (1) directing payment to Gannon out of the fund in the registry of the court an amount equal to the judgment with accrued interest thereon entered in the court in Illinois, with appropriate provision that such payment shall operate as payment in full of the judgment entered in the court in Illinois; (2) directing payment to Bohanon and Barefoot of one half of the fund remaining in the registry of the court after payment of the amount due Gannon, with appropriate provision that such payment shall be applied upon their attorneys' lien; and (3) directing payment to Dowell of the balance of the fund remaining in the registry of the court after the payments have been made to Gannon and Bohanon and Barefoot, respectively, with appropriate provision that such payment shall operate as a credit upon the judgment which Dowell holds against Britton.
 
 
 15
 PICKETT, Circuit Judge (concurring).
 
 
 16
 Under the terms of the insurance policy in effect, Underwriters agreed to defend, in the name and on behalf of the insured, all claims and suits against American, and that "the insurer shall have the right to settle any claims or suits at its own cost * * *".
 
 
 17
 It is my view that Underwriters, in attempting to dispose of its obligation to American under the terms of the policy, had no authority to bind or liquidate the claim as against American. The responsibility of Underwriters was contractual, and in public liability cases it was authorized to conduct negotiations for settlement of claims against the insured, but this responsibility was its own. Although the relationship created by the policy is in some respects similar to that of agency, it is not a true agency. There is no fiduciary relationship between the insurer and the insured. Underwriters had full control over the negotiations and could make final settlement without consulting American. In handling the negotiations for settlement, Underwriters was acting for itself, not as agent for American. Haluka v. Baker, 66 Ohio App. 308, 34 N.E.2d 68; Countryman v. Breen, 268 N.Y. 643, 198 N.E. 536. When the settlement failed, American was not bound by it and the injured party was free to disregard it and proceed with its action. 11 Am.Jur., Compromise and Settlement, § 28; Shubert v. Rosenberger, 8 Cir., 204 F. 934.
 
 
 18
 In this particular case, however, I agree that American, by its acts and conduct, acquiesced in, ratified and adopted the settlement, and thereby became bound by it to the extent that the fund in the interpleader action which it brought was subject to the claim of Gannon on his garnishment.
 
 
 19
 LEWIS, Circuit Judge (dissenting).
 
 
 20
 Apparently my brothers and I are in basic disagreement as to the intended purpose, nature and scope of interpleader for I find myself totally unable to reconcile the results reached by the majority with the liberalized provisions of 28 U.S. C.A. § 1335.[1] If Congress, by opening interpleader to those who "may claim" and by eliminating the identity tests required at common law, has intended to provide a forum for the equitable consideration of claims to money regardless of the independence of such claims, then the holding we make this day seems in error for no such consideration is allowed. Most modern writers agree[2] that present day interpleader is intended to provide an open forum for the court to consider the validity and priority of claims of all those who claim or may claim a fund held by a vexed stakeholder. The view of the majority appears to me to close that forum to those intended by the act to be received and heard within the scope of interpleader and to open the forum, most surprisingly, to one without claim to the fund in question and not even a party to the action. It is not necessary to elaborate, and suffices to point out that the decision:
 
 
 21
 (1) Precludes Britton from contesting the validity of Gannon's judgment notwithstanding the fact that Oklahoma recognizes that right and is presently entertaining the action in state court.
 
 
 22
 (2) Precludes McBride Bone & Joint Clinic from any consideration upon their claim to a right to participation in the fund although no one denies the validity of their claim as a creditor of Britton and as a consequence that they "may claim" against the fund. True, the trial court has determined McBride has no lien on the fund and this aspect of their claim, since no specific appeal was taken, is judicially settled. But the trial court did not determine that McBride had no claim against Britton which could reach the fund if priority permitted.
 
 
 23
 (3) Opens the court to Bohanon and Barefoot, attorneys for Britton but not parties to the action, and allows them major participation in the fund in their own right for services rendered to Britton in the interpleader action[3] and grants them priority over the claim of Dowell whose judgment in Oklahoma is held to precede in time the rendition of the attorneys' services. To allow a contract for contingent attorneys' fees, made between one of the parties and his counsel in the interpleader action itself, to detrimentally affect the rights and priorities of lawful claimants to the interpleaded fund frustrates, in my opinion, the whole function of interpleader.
 
 
 24
 I dissent.
 
 
 
 Notes:
 
 
 [1]
 "(a) The district courts shall have original jurisdiction of any civil action of interpleader or in the nature of interpleader filed by any person, firm, or corporation, association, or society having in his or its custody or possession money or property of the value of $500 or more, or having issued a note, bond, certificate, policy of insurance, or other instrument of value or amount of $500 or more, or providing for the delivery or payment or the loan of money or property of such amount or value, or being under any obligation written or unwritten to the amount of $500 or more, if
 "(1) Two or more adverse claimants, of diverse citizenship as defined in section 1332 of this title, are claiming or may claim to be entitled to such money or property, or to any one or more of the benefits arising by virtue of any note, bond, certificate, policy or other instrument, or arising by virtue of any such obligation; and if (2) the plaintiff has deposited such money or property or has paid the amount of or the loan or other value of such instrument or the amount due under such obligation into the registry of the court, there to abide the judgment of the court or has given bond payable to the clerk of the court in such amount and with such surety as the court or judge may deem proper, conditioned upon the compliance by the plaintiff with the future order or judgment of the court with respect to the subject matter of the controversy.
 "(b) Such an action may be entertained although the titles or claims of the conflicting claimants do not have a common origin or are not identical, but are adverse to and independent of one another." (Emphasis added.)
 
 
 [2]
 See Modernizing Interpleader, 30 Yale L.J. 814; Interstate Interpleader, 33 Yale L.J. 685; Interpleader in U. S. Courts, 41 Yale L.J. 1133; The Federal Interpleader Act of 1936, 45 Yale L.J. 963; Federal Interpleader Since the Act of 1936, 49 Yale L.J. 377
 
 
 [3]
 These attorneys rendered no service to create the interpleaded fund
 
 
 Judgment
 
 25
 PER CURIAM.
 
 
 26
 Heretofore, on July 3, 1957, a judgment was entered in the above entitled and numbered causes. Thereafter, on December 9, 1957, all of the judgment creditors herein executed and filed with the clerk of the United States Court for the Western District of Oklahoma, a stipulation in writing; and on December 17, 1957, they filed with the clerk of this court a certified copy of such stipulation. It was and is provided in such stipulation that the funds in the hands of the clerk of such District Court shall be disbursed and distributed as follows:
 
 
 27
 1. To Mark Gannon, and Rex $18,500
 Holden, his attorney,
 2. To Bohanon & Barefoot 2,760
 Dowell, Inc., 2,760
 3. To Bohanon & Barefoot 2,990
 Dowell, Inc. 2,990
 
 
 28
 Now, therefore, it is hereby ordered and adjudged that the judgment of this court heretofore entered herein be and it hereby is vacated.
 
 
 29
 It is further ordered and adjudged that the judgment of the United States Court for the Western District of Oklahoma insofar as it denied the claims of Carroll Britton and of McBride Bone & Joint Clinic and Bone & Joint Hospital, respectively, be and it hereby is affirmed.
 
 
 30
 It is further ordered and adjudged that in all other respects the judgment of the United States Court for the Western District of Oklahoma be and it is hereby vacated and the causes be and they are hereby severally remanded to such District Court with directions that, when the parties have complied with the requirements imposed upon them by the stipulation, respectively, the funds in the registry of such court be disbursed and distributed pursuant to and in accordance with the stipulation.
 
 
 31
 And it is further ordered and adjudged that no costs be assessed for or against any of the appellants.