**OKLAHOMA TAX COMMISSION, and J. D. Dunn, Chairman, Lawton L. Leininger, Vice-Chairman, M. C. Connors, Secretary, and S. D. Howell, Assistant Director, Income Tax Division, Plaintiffs,**

v.

**Jo Ann McINNIS, District Judge of Oklahoma County, Oklahoma, Defendant.**

**No. 41765.**

Supreme Court of Oklahoma.

Dec. 22, 1965.

Albert D. Lynn, E. J. Armstrong, R. O. Ingle, Oklahoma City, for plaintiffs.

Charles Nesbitt, Atty. Gen., for defendant.

JACKSON, Vice Chief Justice.

This is an application to this court to assume original jurisdiction and grant a writ of prohibition preventing the District Judge of Oklahoma County from enforcing by contempt proceedings her order requiring the Oklahoma Tax Commission, through the Assistant Director of its Income Tax Division, to submit the income tax returns of Mr. Whit Pate for the years 1960 and 1961, to the Oklahoma County Grand Jury now in session, in obedience to a subpoena duces tecum issued at the request of said grand jury.

No question is raised as to the empaneling of the grand jury or its authority to act as such, and no procedural question is raised as to the issuance and service of the subpoena duces tecum.

The basic question presented is as follows: whether under the facts in this case and the applicable law, the Tax Commission was required to submit, and the grand jury and the Attorney General entitled to receive and examine, the income tax returns requested.

The pertinent facts are that the grand jury of Oklahoma County and the Attorney General of Oklahoma, who was assisting it, caused to be issued a subpoena duces tecum to the chairman of the Tax Commission, requiring him to appear at the time designated and bring with him the income tax returns of Mr. Pate. By agreement the Assistant Director of the Income Tax Division of the Commission, Mr. S. D. Howell, was later substituted in place of the chairman. Mr. Howell appeared before the grand jury and, on advice of Commission counsel, refused to produce the Pate income tax returns; he thereafter repeated such refusal to the respondent District Judge, although ordered by her to do so. It is agreed that, if the District Judge was acting within her jurisdiction and authority, Mr. Howell is amenable to proceedings in direct contempt of court.

The Tax Commission bases its refusal to produce the returns upon the provisions of 68 O.S.Supp.1965, Sec. 205, and Oklahoma Tax Commission v. Clendinning, 193 Okl. 271, 143 P.2d 143, 151 A.L.R. 1035. Sec. 205 was formerly codified as 68 O.S.1961, Sec. 1454. The Clendinning case was a proceeding similar in many respects to the one now before this court in which the provisions of this section were construed.

68 O.S.Supp.1965, Sec. 205(a) specifically provides that the records and files of the Commission are confidential and privileged. Section 205(b) specifically provides that the Commission shall not be required by any court to produce such files and records for inspection of any person, or for use in any action or proceeding, *except when the records or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of State tax law affected, or when the information contained therein constitutes evidence of the violation of any State tax law.*

68 O.S.Supp.1965, Sec. 205(b) (4) authorizes the disclosure of information or evidence to the Attorney General or any County Attorney when such information or evidence is to be used by such officials to prosecute violations of the criminal provisions of any State tax law. Such information when received by the Attorney General or any County Attorney shall be kept confidential by them and not be disclosed except when presented to a court in a prosecution for violation of the tax laws of this state. In oral argument in this case the Attorney General stated specifically and unequivocally that the requested tax returns would be used solely for the investigation and enforcement of the tax laws of this state.

The Legislature undoubtedly intended that the confidential and privileged character of an individual's income tax files and records should yield in favor of criminal proceedings conducted in good faith when necessary to determine whether a crime involving income tax laws has been committed and when necessary to determine the guilt or innocence of the person charged or under investigation. Unless the Legislature intended that an individual's income tax returns may be seen by the Attorney General, a County Attorney, and a grand jury, where it is apparent that they are acting in regard to an alleged tax crime occurring within their territorial jurisdiction, then the Oklahoma Tax Commission has become the sole investigator, prosecutor, and judge of whether a crime has been committed, whether the individual should be prosecuted, and whether he should be convicted. We are certain that the Legislature did not so intend and equally certain that the Commission has no desire to assume such all inclusive powers.

In Scribner v. State, 9 Okl.Cr. 465, 132 P. 933, the Court of Criminal Appeals had occasion to determine whether under our constitutional provisions a grand jury investigation of a crime comes within the term "charged with an offense". Therein it was said:

"Looking to the meaning, purpose, and spirit of the Constitution, we are of the opinion that a grand jury investigation of a crime comes within the purview of the term 'charged with an offense,' as used in section 27 of the Bill of Rights of the Constitution of Oklahoma."

In Commonwealth v. Dean, 172 Pa.Super. 415, 94 A.2d 59, it was said:

"Without question, the word 'proceeding', standing alone, is broad enough to cover each step or all steps in a criminal action from commencement to final termination."

In Lindsay v. Allen, 113 Tenn. 517, 82 S.W. 648, 649, it was said:

"* * * Thus, 'proceeding' and 'investigation' relate to proceedings and investigations before a grand jury when the state is proceeding by indictment or presentment; * * * but in all cases the state contemplates some sort of criminal proceeding against a person offending."

See also Marcus v. United States, 310 F.2d 143 (Third Circuit), wherein it was held that a grand jury proceeding is a proceeding for purposes of the statute there under consideration.

In 68 O.S.1961, Sec. 919 (68 O.S.Supp. 1965, Sec. 2325) it is provided that anyone who files a tax return which is false in a material item or particular, is guilty of a felony. 68 O.S.Supp.1965, Sec. 205(d) provides that offenses defined in 68 O.S.1961, Sec. 919, supra, shall be reported to the appropriate County Attorney by the Tax Commission as soon as said offenses are discovered by the Commission or its employees, and further provides:

"Any other provision of law to the contrary notwithstanding, the Commission shall make available to the appropriate County or District Attorney or the authorized agent of said County or District Attorney its records and files pertinent to such prosecutions, and such records and files shall be fully admissible in evidence for the purpose of such prosecutions."

Under Art. 2, Sec. 18, Okla. Constitution, a grand jury is authorized to investigate and return indictments for all character and grades of crime, and under 22 O.S.1961, Sec. 335, when the grand jury believes other evidence is available, they may order such evidence to be produced, and the State's Attorney shall cause process to issue for such witnesses.

Looking to the exceptions which the Legislature intended would outweigh the confidential and privileged character of an individual's income tax returns we are convinced that the Legislature intended that

such returns might be used by appropriate officials in a grand jury proceeding in the enforcement of the State tax laws against the individual who made and filed the tax return.

It is to be noted, however, that such records and files continue to be confidential and privileged when viewed and examined by the Attorney General, County Attorney, and grand jury, for Sec. 205(b) (4), supra, provides severe penalties if these individuals use such returns for any purpose other than in the prosecution of tax law violations. Necessity is obviously the reason for the exceptions and in practical application the exceptions should not be extended beyond that which is necessary in the enforcement of the tax laws. It must be presumed, in the absence of proof to the contrary, that the Attorney General, the County Attorney, and grand jury perform their official duties and that their official acts are regular. Griggs v. Reeser Motor Co., 159 Okl. 279, 16 P.2d 252.

The Commission earnestly contends that our decision in Oklahoma Tax Commission v. Clendinning (1943) 193 Okl. 271, 143 P.2d 143, 151 A.L.R. 1035, provides the complete answer to the questions presented herein. Particular attention is invited to paragraph four of the syllabus therein where it was held:

"Neither the grand jury nor its presiding district judge can compel a witness to testify as to communications or transactions which are expressly declared by statute to be confidential and privileged. And the witness refusing to make such a disclosure may not be proceeded against for contempt."

This is a correct statement of the law in the Clendinning case because the tax returns sought in that case were, as to the Tulsa county authorities, confidential and privileged for lack of venue in Tulsa County. Commission's contention overlooks the facts as set forth in the opinion and other paragraphs of the syllabus in the Clendinning case. For instance, in paragraph two of the court's syllabus, it was held that "[b]y express provision of the law, it is the duty of a grand jury to investigate law violations in its own county, and it has no duty to investigate transactions or acts occurring wholly outside its county, not connected with law violations in its county, or triable therein." In paragraph three of the syllabus it was held that a county attorney has no right for any purpose to inspect individual income tax returns made by citizens who resided and had their place of business and verified their returns in other counties of the state.

The reasons supporting the foregoing paragraphs of the syllabus are clear when the facts as disclosed in the body of the opinion are taken into consideration. In the body of the opinion it is shown that the fifty Oklahoma residents under investigation suspected for income tax violations all resided outside of Tulsa county. They had no offices in Tulsa county and did not verify their tax returns in that county. Under these circumstances no crimes involving the filing of income tax returns could have occurred in Tulsa county. If the Tulsa county grand jury had discovered that crimes involving income tax returns were committed outside of Tulsa County, the courts in Tulsa county would not have had venue to try any indictments that might have been returned. Thus we simply held, in effect, in paragraphs 2, 3, and 4 of the syllabus that income tax returns are confidential and may not be used or seen by a grand jury or a county attorney when the suspected crimes, if any, occurred outside of their territorial jurisdiction. We did not hold that these income tax returns would not be available to the county attorney and grand jury of Tulsa county if any of those under suspicion resided in Tulsa county or verified their returns in that county. In the body of the opinion we said:

"Final briefs herein indicate the possibility that one of the fifty named

citizens may have resided in Tulsa County or had some place of business therein. If the county attorney contends that said taxpayer did so reside or engage in business, and wishes to predicate thereon a right to see that particular return, we will hear him further on the particular point."

In paragraph 8 of the syllabus in Bennett v. District Court of Tulsa county, 81 Okl.Cr. 351, 162 P.2d 561, that court held:

"A grand jury is an inquisitorial body pertaining alone to offenses committed within the county, or that could be prosecuted in the county and has no power to inquire concerning offenses committed beyond the county's boundaries."

In the instant case it is undisputed that Whit Pate resided in Oklahoma County in 1960 and 1961. It is not contended that his income tax returns for the years 1960 and 1961 were prepared in any county other than Oklahoma county. The Attorney General asserts in his response that Whit Pate filed these returns in Oklahoma county, and this assertion is not disputed either in pleadings or in the evidence. Therefore under the second paragraph of the syllabus in Clendinning, supra, and by express statutory law (as quoted in the body of that opinion), it is the duty of the Oklahoma county grand jury to investigate law violations in its own county.

This court has stated that the law of a case is contained in the syllabus. Corbin v. Wilkinson, 175 Okl. 247, 52 P.2d 45. However, we have also said that the facts and reasoning of the court in the body of a decision is an aid to a correct interpretation of the law as announced in the syllabus. Corbin v. Wilkinson, supra, and 1942 Chevrolet Automobile v. State ex rel. Cline, 192 Okl. 555, 136 P.2d 395, 397. In interpreting the law as announced in a syllabus by this court this court may not close its eyes to the facts as shown in the body of the opinion and may not ignore

other paragraphs of the same syllabus. The legal effect of a syllabus by the court in Oklahoma is considered in an article written by Fred R. Harris and appears in 7 Oklahoma Law Review at page 116.

In one of its briefs the Commission submits five questions for our consideration and suggests that if we overrule, modify or distinguish the Clendinning case that we should establish some guide lines for the future action of the Commission. Our decision herein answers some of those questions. In City of Shawnee v. Taylor, 191 Okl. 687, 132 P.2d 950, we said that this court does not give advisory opinions or answer hypothetical questions.

Pursuant to our order of November 22, 1965, and as of that date, the application for writ of prohibition is denied.

HALLEY, C. J., and WILLIAMS, BLACKBIRD and IRWIN, JJ., concur.

DAVISON and LAVENDER, JJ., dissent.

LAVENDER, Justice (dissenting)

I am unable to agree with the majority of the court in its opinion in this matter for the following reasons.

To my mind the issue presented here is not whether the Attorney General of the State of Oklahoma is entitled to inspect the tax records of a certain taxpayer as a preliminary step to prosecuting the taxpayer for violating the criminal provisions of the tax laws of the State of Oklahoma. Even upon a cursory examination of 68 O.S. Supp.1965, Sec. 205(b) (4) it would appear that the Attorney General, as well as the county attorney, would be entitled to examine such records for such purposes.

The issue here presented, however, is whether or not this court shall issue its writ prohibiting the Judge of the District Court of Oklahoma County from carrying out a judgment and sentence of contempt against one Mr. Howell, an employee of

the Oklahoma Tax Commission, who, pursuant to advice of counsel, refused to obey an order of the court to deliver the tax records of a certain taxpayer for the years 1960 and 1961 to a grand jury sitting in Oklahoma County. The order of the court which Mr. Howell refused to obey is herewith quoted directly from the record:

"The Court: Mr. Howell, at this time the court will direct you to produce the records in the subpoena *before the Grand Jury.*" (Emphasis supplied.)

In other words, is a grand jury entitled to compel, by subpoena, the production before it of the heretofore considered confidential and privileged tax returns of an Oklahoma citizen?

68 O.S.Supp.1965, Sec. 205, formerly 68 O.S.1961, Sec. 1454, is the statute, the construction of which is before the court in this action. Said section is herewith reproduced in part:

"§ 205. Records and files of Commission confidential and privileged— Exceptions

"(a) The records and files of the Tax Commission concerning the administration of this Article, or of any State tax law, shall be considered confidential and privileged, and neither the Tax Commission nor any employee engaged in the administration thereof or charged with the custody of any such records or files, nor any person who may have secured information therefrom, shall divulge or disclose any information obtained from the said records or files or from any examination or inspection of the premises or property of any person.

"(b) Neither the Tax Commission nor any employee engaged in such administration or charged with the custody of any such records or files shall be required by any court of this State to produce any of them for the inspection of any person or for use in any action or proceeding except when the records

or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of this Article, or of the State tax law affected, or when the determination of the action or proceeding will affect the validity or the amount of the claim of the State under any State tax law, or when the information contained therein constitutes evidence of the violation of this Article, or any State tax law. Nothing herein contained shall be construed to prevent:

"*   *   *

"(4) The disclosing of information or evidence to the Attorney General or any County Attorney when such information or evidence is to be used by such officials to prosecute violations of the criminal provisions of any State tax law or of this Article. Such information disclosed to the Attorney General or any County Attorney shall be kept confidential by them and not be disclosed except when presented to a court in a prosecution for violation of the tax laws of the State of Oklahoma and a violation by them by otherwise releasing the information shall be a felony;

"*   *   *

"It is further provided that the provisions of this Act shall be strictly interpreted and shall not be construed as permitting the disclosure of any other information contained in the records and files of the Tax Commission relating to income tax or to any other taxes.

"*   *   * "

In Oklahoma Tax Commission v. Clendinning, 143 Okl. 271, 143 P.2d 143, 151 A.L.R. 1035, this court, in passing upon the restrictions imposed by the Legislature making the tax records of individuals privileged from disclosure, had this to say in 1943:

"No one questions the power of the Legislature to so give tax returns this confidential and privileged status. Similar provisions (against disclosure)

are applied to income tax returns in the various states, and to federal income returns. * * * It is not pointed out where any authority has ever denied the power to so provide. * * * This act (68 O.S.1941, Sec. 1454, which is now 68 O.S.Supp.1965, Sec. 205) constitutes the state's compact and pledge to the taxpayer that his tax return shall be kept inviolate, confidential and privileged, and not disclosed to any one, nor in any manner, except as specifically authorized by the act itself, and will be used only for the purposes specifically provided. The Legislature is in complete control as to the wisdom of the act. Our duty is but to follow it and apply it. We are not at liberty to minimize the declared public policy evinced by these express provisions of the act making the information contained in said returns confidential and privileged. * * * "

Nothing appears in the record before us, nor has our attention been directed to any authorities, which would lead us to a different view of the privileged status of tax returns than that expressed in the above quotation from the Clendinning case. As far as this writer is concerned, the above is still the law of this jurisdiction.

The opinion of the majority interprets Section 205(b), supra, as authorizing the Tax Commission to produce tax records of individuals to a grand jury because in said sub-section it is provided that a court may require production of such records "when the records or files or the facts shown thereby are directly involved in an action or proceeding under the provisions of this Article, * * * or when the information contained therein constitutes evidence of the violation of this Article, or any State tax law."

In other words, as I understand the majority opinion it states that an investigation by a grand jury is "an action or proceeding" and that therefore the tax records (under 205(b)) are available.

I cannot agree. In the first place, I am of the opinion that the portion of Section 205(b) above quoted was obviously intended to apply to civil actions and proceedings in courts and before administrative boards, as such actions and proceedings are provided for in the other provisions of the Uniform Tax Code, and that such provisions have no application to criminal prosecutions for violation of the tax laws.

The use of the terms "action or proceeding" in the quoted portion of Sec. 205(b) impels me to a consideration of the meaning of these terms as set forth in other provisions of our statutes and as interpreted by the previous opinions of this court. An "action" is defined in our statutes as follows:

Title 12 O.S.1961, Sec. 4:

"An action is an ordinary proceeding in a *court of justice* by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (Emphasis supplied.)

The term "proceeding" in the quoted portion of Sec. 205(b) above is obviously used in the sense of a "special proceeding." See Title 12 O.S.1961, Sec. 3, as follows:

"Remedies in the courts of justice are divided into:

"First, Actions.

"Second, Special proceedings."

Following Section 4 of 12 O.S.1961, supra, appears Section 5, which is:

"Every other remedy is a special proceeding."

Thus it appears by statute in Oklahoma that there are only two forms of remedy, by an "action" (as defined in Title 12 O.S. 1961, Sec. 4, supra) in a court of justice, or by "special proceeding." In Harryman v. Bowlin, 153 Okl. 202, 4 .P.2d 1011, this

court defined a "special proceeding" as follows:

"The phrase 'special proceeding,' within its proper definition, is a generic term for all *civil remedies in courts of justice* which are not ordinary actions. * * * Where the law confers a right, and authorizes a special application to a court to enforce it, the proceeding is special, within the ordinary meaning of the term 'special proceeding.'" (Emphasis supplied.)

The function of the grand jury is defined by Title 22 O.S.1961, Sec. 331, as:

"The grand jury has power to inquire into all public offenses committed or triable in the county or subdivision, and to present them to the court, by indictment or accusation in writing."

When the matter has therefore been presented by indictment or accusation to the court it *then* becomes an "action" as that term is used in Section 205(b). Then, if that action is one involving a violation of the tax laws of the State of Oklahoma the tax records may be ordered by that court to be produced, for the records would then be " * * * directly involved in an action or proceeding under the provisions of this Article, or when the information contained therein constitutes evidence of the violation of this Article, * * *."

I am unable to see how the "action or proceeding" so described in Sec. 205(b) could possibly mean the investigation of a criminal matter by a grand jury in the performance of its statutory duty.

Scribner v. State, 9 Okl.Cr. 465, 132 P. 933, is cited in the majority opinion apparently to support the proposition that by the act of the grand jury in requesting certain tax records of an individual citizen of Oklahoma such person is automatically "charged with an offense." The facts and issue in that case were totally different from the facts here which can be readily observed on reading the syllabus in that case. The only issue there was whether or not one who voluntarily testifies before a grand jury is by that act exempt from any subsequent prosecution for an offense about which he has testified.

Commonwealth v. Dean, 172 Pa.Super. 415, 94 A.2d 59, cited in the majority opinion, is really authority to support this dissenting view on the question of whether investigation procedure of a grand jury is the "proceeding" referred to in the quoted portion of Sec. 205(b). I have attempted here to point out that such section contemplated the use of the tax records in an action or proceeding in court as distinguished from an investigation procedure before a grand jury. The first paragraph of the syllabus in that case is as follows:

"The word 'proceeding' standing alone, is broad enough to cover each step or all steps in a criminal action from commencement to final termination, that is, from preliminary hearing to final disposition by an appellate court."

"From preliminary hearing" would indicate to my mind that an action was filed in a court of justice, and therefore the word "proceeding" would, in view of this case, mean such an action in court.

Lindsay v. Allen, a Tennessee case, 82 S.W. 648, 649, and Marcus v. United States, 310 F.2d 143 (Third Circuit) were both interpreting specific statutes, the similarities of which to our Uniform Tax Procedure Code are not explained in the opinion.

I do not believe this court should take isolated quotations of doubtful applicability from other jurisdictions and permit them to override the clearly expressed policy of this State regarding the tax returns of its citizens as the majority has done in this case.

To me, the meaning of Sec. 205 of Title 68 O.S.1965 Supp. is clear and unambigu-

ous. First, the tax records are described as privileged and confidential. They are not to be made available except on certain occasions (defined specifically in the statute). Insofar as criminal prosecutions for violations of the tax laws, Sec. 205(b) (4) authorizing the release of the information to the Attorney General or county attorney is the designation of specific persons to whom such records may be delivered, which special designation excludes all others. The established policy that the tax information may be released only to those designated public officials charged with the duty of prosecuting those accused of violating the tax laws is further emphasized by the fact that in the 1965 Legislature the following sentence was added to the section:

"Such information disclosed to the Attorney General or any County Attorney shall be kept confidential by them and not be disclosed except when *presented to a court* in a prosecution for violation of the tax laws of the State of Oklahoma and a violation by them by otherwise releasing the information shall be a felony." (Emphasis supplied.)

By the express terms of the above statute the Attorney General or county attorneys may be convicted of a felony for disclosing the tax information except when presenting it to a court in a prosecution for a tax law violation, whereas under the majority opinion such information will be compelled to be disclosed to a grand jury, which is certainly not a "court" and the members of which could not possibly be convicted of a felony under Sec. 205(b) (4) for improperly disclosing such information. A great part of the protective barriers thus erected by the Legislature around these once considered confidential and highly privileged tax records of individual citizens is thus struck down. The clearly expressed Legislative intent that this Act be strictly construed is thwarted. To my mind, it would have been a simple matter for the Legislature to have included grand juries along with the Attorney General and county

attorneys in Sec. 205(b) (4). It was for the Legislature to determine whether the grand jury should be included, not for this Court.

As stated at the beginning of this opinion, the issue here is only whether tax records of individual citizens may be inspected by a grand jury; however, in passing it should be noted that the Legislature has provided two remedies for the enforcement of the criminal provisions of our tax code. One remedy is that which gives the Tax Commission the right to initiate the prosecution. The second method is to permit the county attorney or Attorney General to examine the returns of a person suspected of violating the tax laws. If the county attorney or Attorney General, after inspecting the tax records, determines that a criminal violation of the tax laws has occurred they are authorized, of course, to file a complaint or information in a court, whereupon such tax records are admissible in evidence.

Either of the above remedies is well calculated to insure the protection of the tax records from public disclosure until it becomes necessary in the prosecution of one accused of evading his taxes.

I am of the opinion that the Oklahoma Tax Commission and the members thereof were entirely in good faith in refusing to deliver the income tax returns of the citizen involved here to the grand jury. The Commission in so acting was merely following the clearly expressed will of the people, through its Legislature, as such will, expressed in the law, has been heretofore interpreted by this Court.

I would therefore issue a writ of prohibition staying the execution of the judgment and sentence of direct contempt for and against the employee of the Oklahoma Tax Commission.

I respectfully dissent.

I am authorized to state that DAVISON, J., concurs in the views herein expressed.