Thomas J. MORRIS and Charlene S. Morris, husband and wife, and natural parents of Benjamin T. Morris, a minor child, deceased, Appellees,

v.

Patrick S. SORRELLS, Appellant,

and

Robert E. Sorrells and Mary Sorrells, Defendants.

No. 71552.

Supreme Court of Oklahoma.

Sept. 15, 1992.

Ray H. Wilburn, M. Cristina Romero, Wilburn, Masterson & Holden, Tulsa, for appellant.

David L. Sobel, M. Shawn Langhorn, Legal Intern, Law Office of David Sobel, Tulsa, for appellees.

WATT, Justice.

## FACTS

On Friday, April 3, 1987, sixteen year old Mike Carver decided to have some Tulsa Union High School classmates over to his apartment for a party, as his mother was out of town. Shortly after school was out for the day, Benji Morris, Chris Woodfin, and eight others met at Mike Carver's apartment. All of the guests were either fifteen or sixteen years old. Mike served a variety of alcoholic beverages to his young friends. Chris Woodfin got drunk and was sick at one point during the party. Benji Morris was thought to be not drunk but not sober either during the evening.

Mike Carver had invited his good friend Pat Sorrells to the party too. Pat Sorrells, however, worked at a pharmacy after school so he did not get to the Carver apartment until sometime after eight p.m. Pat drove his mother's 1980 Ford to the party. Because he did not drink, Pat Sorrells agreed to drive other party-goers on various errands. The record is undisputed that Pat Sorrells consumed no alcohol before the car crash that took the life of Benjamin Morris. Pat was a newly licensed driver, having turned sixteen the previous month, and was not familiar with Tulsa Streets. He relied on his passengers to give him directions.

At about midnight Pat drove Mike Carver's date, Rebecca Putnam, to her grandmother's house, where Rebecca was to spend the night. In the car with Pat were Mike Carver, Rebecca Putnam, Benji Morris, and Chris Woodfin. During the trip some of the passengers teased Pat about his slow and cautious driving, and urged him to drive faster.

After they left Rebecca at her grandmother's house, the four boys started back to Mike Carver's apartment. Chris Woodfin was in the front passenger seat. Seated behind him was Benji Morris. Mike Carver was seated behind Pat. As Pat Sorrells drove through a residential neighborhood in which the speed limit was twenty-five miles per hour, Mike Carver said to him that Chris Robertson, a mutual acquaintance, had once said he could drive the road they were on at seventy miles an hour. Benji Morris leaned forward, said "yeah!," and struck the top of the seat back with his hand. Pat Sorrells immediately sped up. He kept increasing his speed, although he expected one of the other boys to tell him to slow down. The other boys said nothing, so Pat continued to increase his speed. When he was going about fifty, Pat said to the other boys that

he couldn't maintain that speed, but the others did not respond. Pat lost control of the car at a speed of about fifty or sixty miles per hour. He hit a dip in the road at its intersection with another, missed a curve, and crashed into trees on the right side of the road. Benji Morris and Chris Woodfin were killed.

## PROCEDURAL HISTORY

Plaintiffs originally sought punitive damages from Pat Sorrells. At the instruction conference with the trial court following the conclusion of the evidence, however, plaintiffs abandoned the punitive damages component of their claim. The Morrises had joined Pat Sorrells's parents, Robert and Mary Sorrells, as defendants to the action on the theory that they had negligently entrusted their car to Pat. At the conclusion of plaintiff's evidence the trial court sustained Mr. and Mrs. Sorrells's demurrer to plaintiff's evidence. That ruling is not an issue in this appeal, and Robert and Mary Sorrells are not parties here.

The jury returned a verdict in which it found that Benji Morris had been fifty-one percent negligent and Pat Sorrells had been forty-nine percent negligent. In accordance with the requirements of 23 O.S. 1981 § 13, the trial court entered judgment for the defendant Sorrells. Under § 13, Id., comparative negligence bars recovery if the plaintiff's negligence "is of greater degree" than the combined negligence of any other person or persons causing the plaintiff's damages.[1]

Plaintiffs moved for a new trial. At the hearing on plaintiffs' motion for new trial the trial court stated that he thought the jury's assessment of percentages of negligence had been unjust. The trial court said that the record supported the jury's finding that Benji Morris had been guilty of contributory negligence. Nevertheless,

---

**1.** 23 O.S.1981 § 13 reads:

In all actions hereafter brought, whether arising before or after the effective date of this act, for negligence resulting in personal injuries or wrongful death, or injury to property, contributory negligence shall not bar a recovery, unless any negligence of the person so injured, damaged or killed, is of greater degree than any negligence of the person, firm, or corporation causing such damage, or unless any negligence of the person so injured, damaged or killed, is of greater degree than the combined negligence of any persons, firms, or corporations causing such damage.

the trial court granted the plaintiffs' motion for new trial on the ground that Pat Sorrells had been grossly negligent. This, held the trial court, deprived Pat Sorrells of the right to assert the contributory negligence of Benji Morris as a defense. Defendant, Pat Sorrells, appealed from the trial court's order granting plaintiffs a new trial.

Division No. 2 of the Court of Appeals, in a two-to-one opinion, affirmed the trial court's order granting plaintiffs' motion for new trial. Despite the trial court's contrary holding, the Court of Appeals majority held that the evidence was insufficient to support the jury's finding that the conduct of Benji Morris constituted contributory negligence. The Court of Appeals majority also held that Pat Sorrells had been willfully and wantonly negligent, and for that reason the defense of contributory negligence was unavailable to him.

### ISSUE

Was Benji Morris's contributory negligence properly an issue for consideration by the jury? We hold that it was. We therefore vacate the opinion of the Court of Appeals and reverse the trial court's order granting plaintiffs' motion for new trial.

### I.

◼ The undisputed proof shows that Pat Sorrells's passengers had urged him to drive faster at various times before the accident and that he relied on them for directions. After Mike Carver told Pat Sorrells that someone had said he could drive the street they were on at seventy miles per hour, Benji Morris said "yeah!" and slapped the seat. Pat Sorrells then sped up. Pat Sorrells expected to be told to slow down, but such a statement never came. A passenger has a duty to caution a driver if the driver is driving recklessly, *Matchen v. McGahey,* 455 P.2d 52 (Okla.1969); *Bradshaw v. Fields,* 572 P.2d 552 (Okla.1977). Whether Benji Morris violated this duty was a question of fact for the jury. The Court of Appeals erred in holding otherwise.

◼ The trial court granted plaintiffs motion for new trial because it believed the verdict was a miscarriage of justice. The trial court's perception arose from the jury's act of assessing more than fifty percent of the negligence to Benji Morris, which served to deprive plaintiffs of the right to damages.

The trial court believed it could properly grant a new trial if it found the jury's apportionment of negligence to have been so unjust as to constitute a miscarriage of justice. We disagree. In *Cosmo Construction Company v. Loden,* 352 P.2d 910 (Okla.1960), we said,

It is error for the trial court to grant a new trial upon the ground that he cannot conscientiously agree with the verdict of the jury, where negligence and contributory negligence are alleged and supported by competent evidence for the reason that these issues are for the jury to decide and the court cannot substitute its opinion for that of the jury.

Id., 352 P.2d at 913, quoting with approval from *Neely v. Morris,* 333 P.2d 301 (Okla.1958); *Fletcher v. Meadow Gold Company,* 472 P.2d 885, 888 (Okla.1970). To grant a new trial under such circumstances violated Article 23, § 6 Okla. Const.:

The defense of contributory negligence ... shall, in all cases whatsoever, be a question of fact, and shall, at all times, be left to the jury.

Here, the trial court's duty to evaluate the evidence of Benji Morris's comparative negligence ended when it properly held that there was evidence in the record upon which the jury could base a finding that Benji Morris had been contributorily negligent.

### II.

◼ The Court of Appeals majority relied on *Vaughn v. Baxter,* 488 P.2d 1234 (Okla.1971), in support of the proposition that contributory negligence is unavailable as a defense to a defendant whose conduct was willful and wanton. *Vaughn,* however, is inapplicable to the facts of this case. In *Vaughn,* defendant, Baxter, was chas-

ing the car in which plaintiff, Vaughn, was a passenger. Baxter admitted that he intended to inflict bodily harm on Vaughn and his driver if he caught them. The facts here are far different. Pat Sorrells was doing what he thought his friends wanted him to do; he expected his friends to tell him when to slow down. Oklahoma law, defines wanton and willful negligence as "an entire absence of care for the life, person or property of others which exhibits indifference to consequences." See *Barall Food Stores v. Bennett*, 194 Okla. 508, 153 P.2d 106, 110 (1944). The trial court and the Court of Appeals majority erred in holding *as a matter of law* that Pat Sorrells was wantonly and willfully negligent, and, therefore, not entitled to a comparative negligence instruction.[2]

We VACATE the opinion of the Court of Appeals, REVERSE the order of the trial court granting plaintiffs a new trial, and REMAND with INSTRUCTIONS to the trial court to reinstate the judgment for defendant Pat Sorrells on the jury verdict.

All Justices concur.

---

[2] *Vaughn*, Id., was decided in 1971, before the passage of the Oklahoma comparative negligence statutes, 23 O.S.1981 §§ 13 and 14. Contributory negligence was a complete defense to a tort action when *Vaughn* was decided. Depriving a willfully and wantonly negligent defendant of the contributory negligence defense was a response to the harshness of the common law contributory negligence rule that denied damages to a plaintiff if he was even slightly contributorily negligent. Modern comparative negligence laws have eliminated that harshness. Thus, many but not all, courts have seen fit to abandon the old rule. Some of the courts that have abandoned the rule give as a reason for so doing that willful negligence differs from ordinary negligence only in degree and a jury can make the appropriate comparisons under a comparative negligence instruction. For a comprehensive collection of the cases dealing with the problem see Annotation, *Application of Comparative Negligence in Action Based on Gross Negligence, Recklessness, or the Like*, 10 A.L.R.4th 946 (1981).

Defendant cites *Amoco Pipeline Co. v. Montgomery*, 487 F.Supp. 1268, 1272 (W.D.Okla.1980), in which the court, applying Oklahoma law, held that plaintiff, the defendant to a counterclaim, was entitled to urge a comparative negligence defense to its liability for compensatory damages, though the jury assessed punitive damages against it. Defendant urges us to adopt the reasoning of *Amoco*, and hold that the comparative negligence defense is available to a defendant without regard to whether defendant's negligence can be characterized as willful rather than ordinary. We do not reach this issue, however, because the ruling of the lower courts that Pat Sorrells was willfully and wantonly negligent is not supported by the evidence.