CRESTWOOD VINEYARD CHURCH v. CITY OF OKLAHOMA CITY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:CRESTWOOD VINEYARD CHURCH v. CITY OF OKLAHOMA CITY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 CRESTWOOD VINEYARD CHURCH v. CITY OF OKLAHOMA CITY
2020 OK CIV APP 3
Case Number: 117788
Decided: 06/20/2019
Mandate Issued: 01/08/2020
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2020 OK CIV APP 3, __ P.3d __

 

CRESTWOOD VINEYARD CHURCH, INC., Plaintiff/Appellant,
v.
CITY OF OKLAHOMA CITY, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE SUSAN STALLINGS, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Kenyatta R. Bethea, HOLLOWAY, BETHEA & OSENBAUGH, Oklahoma City, Oklahoma, for Plaintiff/Appellant

Sherri R. Katz, Katie Goff, ASSISTANT MUNICIPAL COUNSELORS, Oklahoma City, Oklahoma, for Defendant/Appellee

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 This case arises from a sewer backup that occurred in a church owned by Crestwood Vineyard Church, Inc. Crestwood now appeals from an order of the trial court granting summary judgment in favor of the City of Oklahoma City (the City). We reverse and remand for further proceedings.

BACKGROUND

¶2 Crestwood filed a petition in September 2017 asserting that "a main that is owned and maintained by [the City] had not been properly maintained or repaired as needed," and that this failure to maintain or repair on the part of the City "allowed raw sewage to back up and flood the basement" of Crestwood's church. Crestwood alleged in its petition that as a direct result of the City's negligence, its church "was exposed to Category 3 water," and that "[d]ue to the level of contamination, all porous surfaces such as sheet rock, wood casing trims, lower cabinets, shelves and glue-down carpets will require removal and replacement based on the level of exposure." Crestwood asserted the City owed it a duty "to exercise reasonably prudent and ordinary care in maintaining its sewer lines," and that it violated this duty, resulting in "toxic contamination" of its church building.

¶3 The City filed an answer in which it admitted Crestwood provided written notice pursuant to the Governmental Tort Claims Act (GTCA).[1] However, the City denied Crestwood's allegations pertaining to negligence.

¶4 In December 2018, the City filed a motion for summary judgment. The parties agree a sewer backup occurred in Crestwood's church on January 22, 2017, and that soon after, employees of the City "worked to clean the rooms [of the church] affected by the backup utilizing wet-vacs." It is also undisputed that the City "conducts maintenance on its utility lines[.]" However, the City argues that a duty arises for a municipality "to use reasonable diligence and care to see" that its municipal sewer lines are "not clogged with refuse and is liable for negligence to a property owner injured thereby" only "after reasonable notice of a clogged sewer condition and its failure to maintain and repair its system properly." The City has attached evidentiary materials to its summary judgment motion in support of its contention that during the five years prior to the sewage backup in question, no customer notified the City of any problems with the sewer lines in the vicinity of Crestwood's church. The City argues that because it received no complaints in the area prior to the backup, it did not have reasonable notice and therefore cannot be found to have been negligent. On this basis, as well as on the basis that, according to the City, Crestwood contributed to the sewage backup into its church by "violat[ing] [its] own duty of care by having a non-compliant basement floor drain," the City requests that summary judgment be granted in its favor.[2]

¶5 In an order filed in February 2019, the trial court sustained the City's motion for summary judgment. Crestwood appeals.

STANDARD OF REVIEW

¶6 This Court has previously set forth the applicable standard of review as follows:

An order sustaining summary judgment in favor of a litigant presents solely a legal matter. Feightner v. Bank of Oklahoma, N.A., 2003 OK 20, ¶ 2, 65 P.3d 624. Questions of law mandate application of the de novo standard of review, which affords this Court with plenary, independent, and non-deferential authority to examine the issues presented. Martin v. Aramark Servs., Inc., 2004 OK 38, ¶ 4, 92 P.3d 96.

Examination of an order sustaining summary judgment requires Oklahoma courts to determine whether the record reveals disputed material facts or whether reasonable minds could draw different conclusions from undisputed facts. Cranford v. Bartlett, 2001 OK 47, ¶ 3, 25 P.3d 918. All facts and inferences must be viewed in the light most favorable to the party opposing summary adjudication. Estate of Crowell v. Bd. of Cnty. Comm'rs of Cnty. of Cleveland, 2010 OK 5, ¶ 22, 237 P.3d 134. If the essential fact issues are in dispute, or reasonable minds might reach different conclusions in light of the inferences drawn from undisputed facts, summary judgment should be denied. Schovanec v. Archdiocese of Okla. City, 2008 OK 70, ¶ 39, 188 P.3d 158.

Spane v. Cent. Okla. Cmty. Action Agency, 2015 OK CIV APP 29, ¶¶ 8-9, 346 P.3d 437.

ANALYSIS

¶7 The City asserts that in Oklahoma City v. Romano, 1967 OK 191, 433 P.2d 924, the Oklahoma Supreme Court "specifically addressed when a municipality's duty to a homeowner for sewer back-ups arises." In Romano, the Court stated:

When a municipal corporation assumes the control and management of a sewer system which has been constructed by it and under its supervision, it is bound to use reasonable diligence and care to see that such sewer is not clogged with refuse and is liable for negligence in the performance of such duty to a property owner injured thereby after reasonable notice of the clogged condition of such sewer.

Id. ¶ 0 (Syllabus by the Court). The Romano Court adopted this language from City of Holdenville v. Moore, 1956 OK 34, 293 P.2d 363.

¶8 The City appears to interpret the phrase "reasonable notice" in Romano in a manner limited to notice or complaints received by a municipality from property owners. To determine the correct interpretation of this language from the syllabus of Romano, the body of that decision should also be examined. The Oklahoma Supreme Court has explained elsewhere that while "the law of a case is contained in the syllabus,"

the facts and reasoning of the court in the body of a decision is an aid to a correct interpretation of the law as announced in the syllabus. In interpreting the law as announced in a syllabus by this court this court may not close its eyes to the facts as shown in the body of the opinion . . . .

Okla. Tax Comm'n v. McInnis, 1965 OK 204, ¶ 22, 409 P.2d 355 (citations omitted). In the body of the Romano Opinion, the Court states that

the plaintiffs pleaded that the city permitted the sewer line in question to become stopped up and clogged with refuse; that the city knew, or should have known, of the clogged condition of the sewer, but neglected to properly clean and keep said line in usable condition; and that such clogged condition of the sewer line constituted a nuisance, and was the direct and proximate cause of the damages sustained by the plaintiffs. So, . . . the allegations of the plaintiffs' amended petition came within the principles of law applied by this court in City of Holdenville . . . .

Romano, ¶ 11 (emphasis added).

¶9 The Supreme Court's reasoning in the body of the Romano Opinion teaches that a municipality may obtain notice of a clogged condition of a municipal utility line as a result of the municipality's own regular maintenance in "properly clean[ing] and keep[ing] said line in usable condition," and that this notice may be actual or constructive -- i.e., it may be the case that "the city knew, or should have known, of the clogged condition[.]" Id. As summarized by a division of this Court in Spencer v. City of Bristow, 2007 OK CIV APP 67, 165 P.3d 361, a case cited by Crestwood:

The Oklahoma Supreme Court has stated, "The maintenance and repair of its sewers is a corporate or proprietary function of a city, and the city is liable for injuries sustained because of its failure to maintain and repair sewers properly." City of Holdenville v. Moore, 1956 OK 34, ¶ 8, 293 P.2d 363, 366 (quoting City of Altus v. Martin, 1954 OK 9, ¶ 0, 268 P.2d 228, 229); see also Davis v. Town of Cashion, 1977 OK 59, ¶ 7, 562 P.2d 854, 856; Oklahoma City v. Romano, 1967 OK 191, ¶ 6, 433 P.2d 924, 926.

Spencer, ¶ 12. The Spencer Court concluded by stating:

We must conclude that a controversy exists as to whether [the municipality] had knowledge, actual or constructive, of a defect in the sewer lines to [the property owner's] residence before [the] overflows. "Whether the municipal corporation had actual notice of the defective condition, or whether it had existed for a sufficient period of time for the municipal corporation to be advised of its existence by the exercise of ordinary care, are questions of fact for the jury under proper instructions from the court." City of Tulsa v. Pearson, 1954 OK 298, ¶ 9, 277 P.2d 135, 137. "The existence of facts or circumstances sufficient to put one on inquiry [for purposes of constructive notice] presents a question of fact inappropriate for summary disposition." Manokoune v. State Farm Mut. Auto. Ins. Co., 2006 OK 74, ¶ 18, 145 P.3d 1081, 1085-86. On the record before this Court, in a case with substantial controversies about [the municipality's] operation, maintenance, and repair of its sewer lines, summary judgment is not appropriate.

Spencer, ¶ 21.

¶10 Although we agree with the City that it may be possible for reasonable notice to take the form of complaints from property owners, Romano does not support the argument that a municipality has no duty to undertake any maintenance or inspection of particular municipal sewer lines merely because no property owners have lodged complaints in an area for a certain period of time. It bears repeating that, as quoted in Spencer, the Oklahoma Supreme Court has long held that "[t]he maintenance and repair of its sewers is a corporate or proprietary function of a city, and the city is liable for injuries sustained because of its failure to maintain and repair its sewers properly." City of Altus, 1954 OK 9, ¶ 0 (Syllabus by the Court).[3] The City even acknowledges that Allen McDonald, the Superintendent of the Line Maintenance Division of the Utilities Department of the City, "testified at length [at his deposition] regarding the extensiveness of [the City's] sanitary sewer preventative maintenance plan and grid work." Mr. McDonald testified at his deposition, "I think that municipalities have to maintain their sewer system to the best of their ability[.]" Deposition testimony of another employee of the City, Henry Hawthorne Jr., is also found in the summary judgment materials. Mr. Hawthorne also testified regarding the City's maintenance of its sewer lines. Mr. Hawthorne testified that he is part of a team that performs grid work "[t]o keep sewage from overflowing into the streets and residences and businesses" of the area. He testified that if the City does not perform grid work, "[t]hey'll have a bunch of problems."

¶11 Nevertheless, the City emphasizes that, according to the affidavit of Mr. McDonald, there were "no reported blockages or notices of prior problems with the City's sewer main that services [the church building] or the line segments on either side of the segment servicing [the church building] in the five-year period prior to January 22, 2017." Viewing the facts in the light most favorable to the non-moving party, this evidence merely supports the City's contention that it was not provided with reasonable notice in the form of customer complaints. Disputes of material fact remain, however, as to whether the City nevertheless knew or should have known of a problematic condition in the pertinent city utility lines as a result of its own maintenance and inspection of those lines, or whether a problematic condition existed for a sufficient period of time for the City to be advised of its existence by the exercise of ordinary care. These are questions of fact which are not resolved in either party's favor in the evidentiary materials attached to the summary judgment filings.

¶12 The City is correct to the extent it asserts that the evidentiary materials presented for purposes of summary judgment are largely silent as to whether the City was or was not negligent in the maintenance of its lines. In the excerpts of the deposition testimony of Mr. Hawthorne, whose team was called upon "to fix the problem" after the backup occurred at the church, he testifies he "wasn't assigned that grid" -- i.e., the sewer lines in the vicinity of the church -- for purposes of maintenance, and that he is "not sure whose grid it was." Mr. McDonald's deposition testimony is similarly unhelpful regarding the specific maintenance performed on the pertinent sewer lines during the time period preceding the backup at the church building.[4]

¶13 No additional evidence has been presented at this stage pertaining to whether or not the City, during the time period preceding the sewer backup at the church, "maintain[ed] and repair[ed] its sewers properly." City of Altus, 1954 OK 9, ¶ 0 (Syllabus by the Court). In the face of this evidentiary gap regarding the relevant acts or omissions of the City,[5] the City, as the moving party, nevertheless stresses that Crestwood "has simply not provided any support for its allegations that the City had prior notice of a defect or obstruction in the sewer main servicing the Property nor does [Crestwood] provide any evidence the City was negligent in the maintenance of its lines." Under District Court Rule 13, however, a moving party cannot successfully contend there is no substantial controversy as to a material fact -- e.g., here, that the City properly maintained and repaired its sewer lines, City of Altus, ¶ 0, or properly cleaned and kept those lines in a usable condition, Romano, ¶ 11 -- without referencing a particular piece of evidence which supports that contention. Rule 13 states that "[r]eference shall be made in the statement to the pages and paragraphs or lines of the evidentiary materials that are pertinent to the motion," Dist. Ct. R. 13(a), 12 O.S. Supp. 2013, ch. 2, app. (emphasis added), and further states that only "material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition unless specifically controverted by the statement of the adverse party which is supported by acceptable evidentiary material," Dist. Ct. R. 13(b) (emphasis added).[6] Apart from showing a lack of customer complaints, the City has not presented any evidence regarding the inspection, maintenance or repair, if any, performed on the municipal sewer lines in question during the time period prior to the January 22 sewer backup.

¶14 Summary judgment

should only be granted when it is clear there are no disputed material fact issues. This Court has consistently held that summary judgment should be denied where there are controverted material facts or if reasonable minds could reach different conclusions from the undisputed material facts. The facts and inferences therefrom must be viewed in the light most favorable to the non moving party.

Fargo v. Hays-Kuehn, 2015 OK 56, ¶ 12, 352 P.3d 1223 (footnotes omitted). Although, according to the evidence thus far produced, the City did not timely receive any complaints from property owners in the pertinent area, it is not clear at this time that there are no disputed fact issues regarding whether the City nevertheless had timely knowledge, actual or constructive, of a defect in the sewer lines in question.

¶15 We are also unpersuaded by the City's argument that summary judgment should be awarded in its favor because of possible negligent acts or omissions on the part of Crestwood. In Johnson v. Hillcrest Health Center, Inc., 2003 OK 16, 70 P.3d 811, the Oklahoma Supreme Court noted as follows:

If a defendant's action contributed to cause a plaintiff's injury, the defendant is liable even though his/her act or negligence alone might not have been a sufficient cause. The proximate or contributing cause of a plaintiff's injury is a question of fact for the jury. It becomes one of law only when there is no evidence from which the jury could reasonably find a causal link between the negligent act and the injury or where the facts are undisputed. Where uncontroverted facts lend support to conflicting inferences, the choice to be made between opposite alternatives also presents an issue of fact for the jury.

Id. ¶ 18 n.25 (citations omitted). See also Morris v. Sorrells, 1992 OK 125, ¶ 14 n.2, 837 P.2d 913 ("[T]he common law . . . denied damages to a plaintiff if he was even slightly contributorily negligent. Modern comparative negligence laws have eliminated that harshness."). We therefore conclude summary judgment was inappropriately granted.

CONCLUSION

¶16 We reverse the trial court's order filed in February 2019 sustaining the City's motion for summary judgment. We remand for further proceedings.

¶17 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

WISEMAN, V.C.J., and RAPP, J., concur.

FOOTNOTES

[1] Title 51 O.S. 2011 & Supp. 2018 §§ 151-200. The City also admits Crestwood's claim was deemed denied on September 6, 2017. See 51 O.S. §§ 156 & 157.

[2] We note that the City has set forth various affirmative defenses in its Answer, including that the City "is exempt from liability . . . pursuant to the [GTCA]," but does not argue at this stage of the proceedings that it should be granted summary judgment on the basis that an applicable exemption from liability exists under the GTCA.

[3] We note that in Richards v. City of Lawton, 1981 OK 62, 629 P.2d 1260, the Oklahoma Supreme Court noted: "The concept of municipal immunity from liability for a 'governmental' function, if still viable, could not afford the [municipality] a shield in this case. The maintenance of street, sewer and drainage systems is commonly viewed as 'proprietary[.]'" Id. ¶ 9 n.5 (Memorandum Opinion) (citing, inter alia, Romano and City of Altus). See also Valley Vista Dev. Corp. v. City of Broken Arrow, 1988 OK 140, ¶ 13 n.11, 766 P.2d 344 ("Operation of a sewer system is proprietary and not governmental in nature. Therefore, this is not a situation where the municipality is engaged in a governmental function . . . ." (citations omitted)).

[4] Mr. McDonald did testify that the maintenance that does occur is, in his words, "more complaint based[.]" See also Mr. McDonald's Affidavit at ¶ 8 ("When the City receives notice regarding problems with its sanitary sewer system, this notice is documented, and work orders are created, prioritized, and effectuated through normal scheduling."). Viewing the facts thus far developed in the light most favorable to Crestwood for purposes of determining the appropriateness of summary judgment, Mr. McDonald's testimony, when combined with the City's emphasis that it received no customer complaints during the five-year period preceding the sewage backup, if anything supports at least one reasonable inference favorable to Crestwood -- e.g., that the City performed no maintenance or upkeep in the relevant area during that time.

[5] We note that in February 2019 Crestwood filed a motion to defer consideration of the City's motion for summary judgment under 12 O.S. § 2056(F) on the basis that "certain discovery" had not yet been completed and "[the City] refuses to provide [Crestwood] with documentation that evidences its prior notice of a blockage in its sewer system." In addition, in August 2018 Crestwood filed a motion seeking an order compelling discovery from the City. Crestwood asserted in this motion that it had previously requested "a copy of all grid work orders reflecting preventative maintenance performed by the City since January 1, 2007," and "all documents that reflect the implementation of the grid work preventative maintenance program since January 1, 2007," but asserted the City "made it abundantly clear that it would not produce any information in response to either" request. The City filed an objection to Crestwood's motion to compel in September 2018. The documents contained in the appellate record do not appear to disclose any explicit resolution of these filings.

[6] See also 12 O.S. 2011 § 2056(C) & (E) ("The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law," and "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2007 OK CIV APP 67, 165 P.3d 361, SPENCER v. CITY OF BRISTOW
Discussed
 2015 OK CIV APP 29, 346 P.3d 437, SPANE v. CENTRAL OKLAHOMA COMMUNITY ACTION AGENCY
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 140, 766 P.2d 344, 59 OBJ 3438, Valley Vista Development Corp., Inc. v. City of Broken Arrow
Discussed
 1992 OK 125, 837 P.2d 913, 63 OBJ 2587, Morris v. Sorrells
Discussed
 2001 OK 47, 25 P.3d 918, 72 OBJ 1792, CRANFORD v. BARTLETT
Discussed
 1954 OK 9, 268 P.2d 228, CITY OF ALTUS v. MARTIN
Discussed at Length
 1954 OK 298, 277 P.2d 135, CITY OF TULSA v. PEARSON
Discussed
 1956 OK 34, 293 P.2d 363, CITY OF HOLDENVILLE v. MOORE
Discussed at Length
 1965 OK 204, 409 P.2d 355, OKLAHOMA TAX COMMISSION v. McINNIS
Discussed
 1967 OK 191, 433 P.2d 924, OKLAHOMA CITY v. ROMANO
Discussed at Length
 2003 OK 20, 65 P.3d 624, FEIGHTNER v. BANK OF OKLAHOMA, N.A.
Discussed
 2003 OK 16, 70 P.3d 811, JOHNSON v. HILLCREST HEALTH CENTER, INC.
Discussed
 2004 OK 38, 92 P.3d 96, MARTIN v. ARAMARK SERVICES, INC.
Discussed
 2006 OK 74, 145 P.3d 1081, MANOKOUNE v. STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.
Discussed
 2008 OK 70, 188 P.3d 158, SCHOVANEC v. ARCHDIOCESE OF OKLAHOMA CITY
Discussed
 2010 OK 5, 237 P.3d 134, ESTATE OF CROWELL v. BOARD OF COUNTY COMMISSIONERS
Discussed
 1977 OK 59, 562 P.2d 854, DAVIS v. TOWN OF CASHION
Discussed
 2015 OK 56, 352 P.3d 1223, FARGO v. HAYS-KUEHN
Discussed
 1981 OK 62, 629 P.2d 1260, Richards v. City of Lawton
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2056, Motion for Summary Judgment
Discussed
Title 51. Officers
 Cite
Name
Level

 51 O.S. 156, Claims - Petition - Limitation of Actions - Notice - Wrongful Death
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA