CITY OF MUSKOGEE v. TURNER.

*98 P. 2d 1095.*

No. 29291.    Jan. 23, 1940.

Rehearing Denied Feb. 13, 1940.

C. A. Ambrister, of Muskogee, for plaintiff in error.

Thomas J. Wiley, of Muskogee, for defendant in error.

DANNER, J. Broadway runs east and west in the city of Muskogee. The plaintiff owns business property on the south side of that street. On the east of plaintiff's property an alley runs north and south, letting into Broadway. A theatre is situated on the east part of plaintiff's property, facing north on Broadway and with its east side on the alley. West of the theatre the ground floor consists of rooms for stores and shops.

The defendant city of Muskogee owns and operates a municipal water plant. For many years it has supplied water to the plaintiff's property, there being a meter in the sidewalk in front of one of the stores a few feet west of the theatre, and there being another meter down the alley approximately opposite the rear of the theatre. The defendant's mains for conducting water run underneath the ground, east and west, paralleling the south curb of Broadway, and north and south underneath the alley.

The controversy is concerned mainly with the meter on Broadway. A lateral line was installed in the year 1907, connecting the main and plaintiff's building, the meter being in the lateral. The plaintiff installed it. For some while prior to ·September of 1936, the plaintiff had complained to the city water superintendent or other city officials, urging that there was a leak in the meter or in one of the water lines. Several times the water superintendent visited the premises and made inspections, which will be related more in detail later. However, the city failed to do more than inspect, and in September of 1936 it was discovered by plaintiff and his workmen that the connection to the meter, on the north side of said meter, was leaking substantially and that the water was and had been running underneath the meter box and sidewalk and permeating the soil underlying his premises.

He brought this action against the city, for damages caused the joists and foundation of the building by reason of the water-soaked condition thereof, the said joists and foundation having thus been weakened and also made more attractive and inviting to fungus growth and termites. The trial was had without a jury. The court rendered judgment for plaintiff in the amount of his expenditure for repairing the foundation, and defendant appeals.

It is first urged that the court erred in entering judgment based upon negligent installation of the lateral and meter when there was no evidence that the defendant installed the same. We do not agree that the record indicates the judgment was based on that theory. It appears that the basis of the judgment was negligence in the proper maintenance of the lateral and meter, after notice of

the defect. The correctness of the judgment is not dependent upon the theory of negligent installation.

In this jurisdiction the operation of a municipal waterworks is a proprietary, as distinguished from governmental, function, and in the exercise of said function cities are governed largely by the same rules as are applicable to private corporations engaged in the same business. Oklahoma City v. Hoke, 75 Okla. 211, 182 P. 692.

It is well settled that a municipality is liable for negligently permitting a dangerous or injurious defect to continue, after notice thereof, and this is true even if the municipality was not at fault in the beginning or did not itself cause the defect. City of Shawnee v. Sears, 39 Okla. 789, 137 P. 107, 50 L. R. A. (N. S.) 885. As an illustration, we have held that the manner of maintenance of a sewer by a city may constitute a nuisance. Oklahoma City v. Eylar, 177 Okla. 616, 61 P. 2d 649; Oklahoma City v. Myers, 177 Okla. 622, 61 P. 2d 653; Oklahoma City v. Miller, 179 Okla. 363, 65 P. 2d 990. As stated above, the case was not tried on the theory of negligent installation, but on the theory of negligent maintenance, and this was sufficient.

It is urged that the court erred in holding that the allegation of negligence was sufficient. It is said that the plaintiff failed to allege any specific act of negligence, relying simply upon the general allegation that the defendant was negligent. Such, however, was not the case. The action originated in the city court of Muskogee, where plaintiff prevailed, and then it was appealed to the district court. The amended bill of particulars, in addition to alleging notice, alleged that the defendant was negligent in installing "and maintaining" the lateral and meter "in that the connections made by said defendant were broken and ruptured or became broken and ruptured," thereby causing a leak, and that thereby a large amount of water continuously escaped from said lateral before reaching the meter, into the soil surrounding the said meter, etc. This language sufficiently averred that the defendant was negligent in maintaining the lateral and meter after same became broken and ruptured. A broken or ruptured connection and the resultant leak would hardly admit of a more concise description than the simple statement used in the bill of particulars. We hold that it was sufficient to put the defendant on notice of the theory, or at least one of the theories, of plaintiff's basis of complaint.

It is next contended that there was no proof of negligence or proximate cause. The record has been thoroughly read and studied, and after careful consideration thereof it is our opinion that the evidence was sufficient to sustain the finding that water did escape from the defective connection, causing plaintiff's damage, and had escaped therefrom for some months prior to the actual discovery thereof in September of 1936. We shall not indulge in a detailed narrative of the testimony of the various witnesses. From the condition of the soil, grooves worn in the clay directly from the meter back to and under the building, tests conducted to find the source of the watery condition, alleviation of that condition upon repair of ·the leak, and other inferences reasonably deducible from the evidence, the finding that water had escaped from the connection for some while is sufficiently sustained. It is true, as contended by defendant, that there were other leaks. There was a leak in the city's fire main in the alley, and possibly there was some seepage from adjoining premises, but nevertheless the evidence amply sustained a finding that water in substantial quantities leaked from the meter in question, and that said leak did contribute to the damage sustained by plaintiff. In that respect the case is analogous to that of liability of joint tort-feasors, each contributing to the injury or damage.

It is furthermore true, as argued by defendant, that the city is not an insurer of its water mains. Nevertheless, if it fails to remedy a rupture after

notice thereof (the question of notice is considered below), and simply, by its inaction, permits continuance of resultant damage to private property, it is guilty of negligence. This is too well settled to justify further reference to authorities.

We now approach a more difficult phase of the case, namely, the contention that there was no evidence tending to sustain a finding that the city either had actual notice or was charged with notice of the defect in time to remedy it. In this connection the defendant points to the testimony of the meter readers, who read meters monthly and who testified that they never observed any defect when reading this meter; to the testimony of the city water superintendent who described several visits to the premises and inspection of the meter in the summer of 1936, particularly in July and August, and that he discovered no defect therein; to the plaintiff's own allegation in the bill of particulars, that the damage done by the leaking water did not become obvious or apparent until September of 1936, wherefore the defendant argues that if the plaintiff himself did not become aware of it until that time, then the defendant should not be charged with notice of it.

The foregoing argument, standing alone, is plausible on its face and would continue to appear so on a casual reading of the record, but loses force in direct ratio to the amount of care devoted to analyzing said record and comparing it with the argument. Let us take, for instance, the testimony of the water superintendent. He admitted that time and again he received a complaint from the plaintiff and that his attention was directed to this meter, under circumstances which clearly put him under a duty to investigate. He did investigate. Did the fact that he testified he found no defect remove the effectiveness or efficiency of the notice, *as such*? Certainly not. (It must be remembered that we are at present dealing only with the question of notice; we have elsewhere considered the question whether there was evidence that the water had in fact been leaking for some while, and have decided that question in the affirmative.) His testimony that he found no defect relates, at most, only to the question whether there was a defect; it does not destroy nor erase the fact that nevertheless notice was given. Notice, or its equivalent, is important in all cases involving negligent maintenance or defects arising after installation or construction. When there is actual notice, the defendant usually sends an inspector; we think it self-evident that the later testimony of the inspector, to the effect that he found nothing faulty, does not entitle the defendant to disclaim having received notice even though the inspector did not discover the defect.

Apropos of the foregoing, and also of the testimony of the meter readers, it was admitted by the water superintendent that water stood in the meter box when he inspected it; there was testimony, also, that every time the meter was read the box was full of water which had to be bailed out in order to read the meter. The meter box was made of concrete, 18 inches in width, with an iron lid locked on the top and with the bottom unenclosed and resting in or on earth. If the leak from the connection was approximately equal to the capacity of the outlet under the meter box, then the water in the meter box, above the meter, as testified to, would not necessarily change its level appreciably. The water superintendent, according to his testimony, observed that there was water standing in the box but ascribed it to the effect of rains. Whatever he may have ascribed it to, the fact remains that either by reason of being sent there by the governing officials or by reason of having been invited by plaintiff (the record does not reveal which), he went to the premises and inspected, or talked with plaintiff, five or six times (according to defendant's brief) during the summer preceding discovery of the exact nature of the leak in September of 1936.

Concerning the allegation in the bill

of particulars that the damage did not become obvious until September of 1936, and defendant's argument that therefore it should not be charged with notice of what the plaintiff himself did not discover, it is observed that the defendant fails to distinguish between (1) negligence and (2) discovery of its effect. Plaintiff did not allege that the defective condition·surrounding and in the meter box failed to become apparent until September of 1936; he alleged, on the contrary, that the defendant had notice thereof prior to that time but that he did not discover the *damage to his building* until that time. The evidence showed that defendant had notice that something there was defective several months prior to the discovery, by plaintiff, of the exact nature of the defect. It was not necessary that plaintiff diagnose the defect to a mechanical certainty and convey his findings to the defendant, in order that the notice have legal effect.

Finally, it is contended that the trial court erred in applying the doctrine of res ipsa loquitur to the case. There is no indication in the record that the court applied that doctrine.

The judgment is affirmed.

WELCH, V. C. J., and CORN, HURST, and DAVISON, JJ., concur.