2007 OK CIV APP 67

**Teresa Erin SPENCER, Plaintiff/Appellant,**

v.

**CITY OF BRISTOW, Defendant/Appellee.**

**No. 103,774.**

Court of Civil Appeals of Oklahoma, Division No. 2.

June 8, 2007.

Mark D. Matheson, Sapulpa, OK, for Plaintiff/Appellant.

David L. Weatherford, Birmingham, Morley, Weatherford & Priore, P.A., Tulsa, OK, for Defendant/Appellee.

JANE P. WISEMAN, Judge.

¶1 Appellant, Teresa Erin Spencer (Spencer), appeals an order of the trial court granting the motion for summary judgment filed by City of Bristow (City). After review of the record and applicable law, we find disputed material issues of fact preclude summary judgment, and we reverse and remand the matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

¶2 On January 30, 2005, Spencer returned home to discover raw sewage had overflowed from her toilet into her home causing damage to the floors, carpet, sheetrock, and other household items (First Overflow). The sewer system belongs to and is under the control and management of City. On March 22, 2005, Spencer filed a petition against City alleging negligence for breaching its duty to Spencer to exercise reasonable care in maintaining its sewer lines and further alleging that the accumulation of raw sewage in Spencer's home deprived her of the use of her residence and was therefore a nuisance for which City was responsible. On June 1, 2005, Spencer's house again flooded with raw sewage (Second Overflow). Spencer filed a subsequent amended petition to include the Second Overflow.

¶3 After conducting discovery, City filed its motion for summary judgment. City claimed immunity under the Governmental Tort Claims Act, 51 O.S.2001 & Supp.2006 §§ 151-200 (GTCA), asserting its provisions relieve City of liability unless the acts complained of involve a proprietary function not

exempt under § 155. City does not dispute that it is responsible for maintaining the sewer lines in question, nor does it dispute that it has liability for failing to properly maintain the sewer lines.

¶ 4 City claims, however, that Spencer could offer no evidence of City's prior knowledge of a defect, a prerequisite to liability. City also claims that it is only required to use that degree of care that is reasonable under the circumstances and that it did so by performing regular maintenance on City's sewer lines, by promptly responding to the First Overflow, and by making repairs to the lines. City maintains that it breached no duty to Spencer and that it was entitled to summary judgment on Spencer's claims.

¶ 5 Spencer filed a response to the motion in which she asserted that the facts on which City relied to establish its entitlement to judgment as a matter of law were disputed and were therefore questions for the jury, making summary judgment improper. Both parties in support of their positions attached evidentiary materials under Rule 13, Rules for the District Courts of Oklahoma, 12 O.S. Supp.2006, ch.2, app.

¶ 6 The trial court granted the motion and entered judgment in City's favor on Spencer's claims.[1] Spencer appeals under the accelerated procedure set out in Rule 1.36, Oklahoma Supreme Court Rules, 12 O.S. Supp.2006, ch.15, app.1.

¶ 7 On appeal, Spencer alleges trial court error in granting judgment as a matter of law in favor of City because a genuine dispute of material fact exists with respect to the following as stated in her petition in error: whether City exercised reasonable care in the maintenance of its sewer lines; whether City had actual or constructive notice of a defect in its sewer lines; and whether City was negligent in performing its maintenance duties.[2]

¶ 8 We find that material facts are in dispute with respect to both of Spencer's claims and that summary judgment in City's favor cannot properly be granted as a matter of law.

## STANDARD OF REVIEW

¶ 9 The standard of review on the entry of judgment granting summary relief is *de novo*. *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084. The appellate court enjoys plenary, independent and non-deferential authority to reexamine the trial court's legal rulings. *Id.*

¶ 10 We "examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact" and view the facts and all reasonable inferences arising therefrom "in the light most favorable to the non-moving party." *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Summary judgment is appropriate when the pleadings, affidavits, depositions, admissions or other evidentiary materials show there is no substantial controversy as to any material fact and one party is entitled to judgment as a matter of law. *Tucker v. ADG, Inc.*, 2004 OK 71, ¶ 11, 102 P.3d 660, 665. "Even when basic facts are undisputed, motions for summary judgment should be denied if, under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts." *Bird v. Coleman*, 1997 OK 44, ¶ 20, 939 P.2d 1123, 1127.

## ANALYSIS

¶ 11 The doctrine of sovereign immunity for the State of Oklahoma and its political subdivisions, as set forth in the GTCA, states, "The state, its political subdivisions, and all of their employees acting within the

---

1. Spencer alleged both negligence and nuisance in the operation and maintenance of City's sewer system. City's motion for summary judgment addressed the negligence claim but did not directly address the nuisance claim. Despite this, however, the trial court granted judgment in favor of City and against Spencer "in regard to all claims herein." The trial court's order is not specific on the basis for the decision.

2. Spencer also raises *res ipsa loquitur* in her last proposition of error which we will not address. This issue was not raised in the trial court, and this Court will not make a first-instance determination of such an issue which is, in every case, the trial court's function. *Bivins v. State ex rel. Okla. Mem'l Hosp.*, 1996 OK 5, ¶ 19, 917 P.2d 456, 464.

scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts." 51 O.S.2001 § 152.1(A). The GTCA waives that immunity only to the extent and in the manner provided for in the GTCA. 51 O.S.2001 § 152.1(B). The Act provides as follows:

The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment subject to the limitations and exceptions specified in this act and only where the state or political subdivision, if a private person or entity, would be liable for money damages under the laws of this state.

51 O.S.2001 § 153(A). The GTCA then provides that the state or a political subdivision is not liable if a loss or claim results from any of 33 exemptions listed in 51 O.S. Supp. 2006 § 155.[3]

■ ¶ 12 The Oklahoma Supreme Court has stated, "The maintenance and repair of its sewers is a corporate or proprietary function of a city, and the city is liable for injuries sustained because of its failure to maintain and repair sewers properly." *City of Holdenville v. Moore*, 1956 OK 34, ¶ 8, 293 P.2d 363, 366 (quoting *City of Altus v. Martin*, 1954 OK 9, ¶ 0, 268 P.2d 228, 229); *see also Davis v. Town of Cashion*, 1977 OK 59, ¶ 7, 562 P.2d 854, 856; *Oklahoma City v. Romano*, 1967 OK 191, ¶ 6, 433 P.2d 924, 926. Oklahoma law requires municipalities "to use reasonable diligence and care to see that such sewer is not clogged ... and is liable for negligence in the performance of such duty to a property owner injured thereby after reasonable notice of the clogged condition of its sewer." *Moore*, 1956 OK 34 at ¶ 8, 293 P.2d at 366; *see also Davis*, 1977 OK 59 at ¶ 11, 562 P.2d at 857 ("Reasonable diligence and care in [the] operation [of a sewer system] is the measure of duty.").

¶ 13 In *Moore*, the plaintiffs testified that when the first backup occurred, they notified the city, but the city did nothing about it. The plaintiffs' home flooded again with raw sewage, and the city thereafter cleaned out the sewer removing large roots and other substances. The Supreme Court stated, "This in substance constitutes the evidence in the case and in our opinion is sufficient to establish negligence against the defendant in the maintenance and operation of its sewer system." *Moore*, 1956 OK 34 at ¶ 7, 293 P.2d at 366.

¶ 14 Similarly, the Oklahoma Supreme Court has held that a city is not immune from liability for nuisance in the operation and maintenance of its sewer systems. *City of Holdenville v. Griggs*, 1966 OK 34, ¶ 11, 411 P.2d 521, 524–25; *see also City of Ada v. Canoy*, 1947 OK 34, ¶ 9, 177 P.2d 89, 91 ("A municipality may be guilty of maintaining and operating its sewer system in such manner as to constitute a nuisance."); *City of Muskogee v. Turner*, 1940 OK 26, ¶ 7, 98 P.2d 1095, 1096 ("[T]he manner of maintenance of a sewer by a city may constitute a nuisance."). With regard to nuisance, the Court stated:

While it is true as contended by defendant that a municipality is not an insurer of its sewer system, and while there is authority to the effect that a city cannot be held liable in damages because of error in judgment as to the size of drains or sewers necessary to carry away sewage or surface waters, it is generally held that if, after such sewers and drains are constructed, it becomes evident that the same as constructed are inadequate to perform the functions contemplated, and after due notice thereof it fails to take steps necessary to remedy such condition and continues thereafter to operate the same in such manner as to constitute a nuisance, it will be held liable.... In such case liability will attach irrespective of the question of negligence on its part.

---

**3.** It is unclear which, if any, of the exemptions City is specifically alleging applies to the facts of this case. In City's motion for summary judgment, a brief mention is made of exemption number 13 involving City's inspection powers or functions. Spencer, however, is not alleging negligent inspection by City but negligence in the maintenance and operation of City's sewer system. "[M]aintenance of property is not the same thing as inspection of property for [51 O.S.] § 155(13). A landowner may be liable for negligent maintenance of property irrespective of its inspection powers or functions." *Moran v. City of Del City*, 2003 OK 57, ¶ 10, 77 P.3d 588, 592.

*Griggs,* 1966 OK 34 at ¶ 11, 411 P.2d at 524–25 (quoting *City of Ada,* 1947 OK 34 at ¶ 9, 177 P.2d at 91). The Supreme Court in *Griggs* found that the evidence presented supported plaintiff's claim that the sewer system was inadequate, which was called to the city's attention when the sewer backed up into plaintiff's home on several occasions. Plaintiff contacted the city after each backup. Even though the city rodded the lines after each backup, the Court determined that the city failed to remedy the condition, and consequently, the city was held liable. *Griggs,* 1966 OK 34 at ¶ 12, 411 P.2d at 525.

¶ 15 The evidence in this record reveals that reasonable minds could reach different conclusions about whether the manner in which City maintained its sewers was reasonable, and this is therefore a disputed question of fact. Carl Sands (Sands), City's maintenance worker, testified, "As far as maintenance, we have no maintenance program because we got 80, 90 miles of line . . . so we don't know how to do any of that." He was then asked, "So you don't maintain the lines?" Sands answered, "Well, we do if we know there's something wrong with them." When asked further about City's maintenance program, Sands stated, "We put chemicals in once in a while, and we'll go out and rod a line once in a while," but as far as regular maintenance, "there's no way to know until you have a problem . . . because maintaining sewer line or a program to rod sewer lines and stuff like that, it would take three people, 24–hour–a–day job every day, and . . . we've never done that, as far as I know."

¶ 16 Steve McGuire (McGuire), City's public works director, testified that prior to the First Overflow, City did maintenance work on sewer lines "[w]ithin a block" of Spencer's house. He also reported that Spencer's residence, built in the 1970s, is in a "fairly new addition so we usually don't . . . go over there and do that much maintenance because there's really not none needed."

¶ 17 Both Sands and McGuire testified that they knew on January 30, 2005, that the main sewer line and the manhole to Spencer's property on the west had backed up but did not know until some days later that the property had flooded. When asked if he investigated to see why the house had flooded on January 30, McGuire answered, "we figured that because of the main that we went out there and unplugged was the reason." He was then asked if he still believed "that the problem with the main is the reason the house at 1217 South Poplar backed up," and McGuire replied, "I know it probably had something to do with it, or it could have," and then states, "I know it had something to do with it. I know that."

¶ 18 The evidentiary materials demonstrate disputed questions of material fact about whether City exercised reasonable care in the operation and maintenance of its sewer lines before the First Overflow and about whether City exercised reasonable care in its maintenance and repair of the sewer lines in question after the First Overflow and before the Second Overflow.

¶ 19 A final question remains as to whether City had knowledge, actual or constructive, of a defect in its system. City admitted in its responses to requests for admissions that it was aware of a defective condition in City's sewer lines located within one mile of Spencer's residence where the backups occurred. McGuire testified that even though City was responsible for maintaining the sewer lines, "he never sent anybody out to rod that line" connected to Spencer's residence. He testified that, prior to the First Overflow, City did work on sewer lines within a block of Spencer's home but not her specific line. He further stated that another line "real close" to Spencer's residence was previously obstructed with roots in it and City used the root cutter to clear that obstruction. This was not done on Spencer's line although McGuire testified that a root cutter probably would have prevented the January 30 backup.

¶ 20 City was also put on notice of the potential for root infiltration problems and line collapse when it rodded and then replaced the sewer line immediately following the First Overflow in January of 2005. Yet leading up to the Second Overflow in June 2005, City failed to use the devices at its disposal to maintain the line and to assure that it was kept free of roots or other poten-

tial obstructions. Sands testified that after the First Overflow, City did not "camera" the lines connected to Spencer's residence "[b]ecause we wasn't going towards her house. We wasn't rodding towards her house. We had no knowledge it was even flooded." He testified that when the First Overflow occurred, he was only informed that a manhole had flooded and not a residence, and that it was not until about two weeks later that he learned Spencer's house had flooded. Sands also admitted that, if they had used a camera after the First Overflow, they would have known if anything was wrong that may have caused the Second Overflow, but City did not do this. City did, however, use a camera to view the lines after the Second Overflow.

¶ 21 We must conclude that a controversy exists as to whether City had knowledge, actual or constructive, of a defect in the sewer lines to Spencer's residence before both overflows. "Whether the municipal corporation had actual notice of the defective condition, or whether it had existed for a sufficient period of time for the municipal corporation to be advised of its existence by the exercise of ordinary care, are questions of fact for the jury under proper instructions from the court." *City of Tulsa v. Pearson,* 1954 OK 298, ¶ 9, 277 P.2d 135, 137. "The existence of facts or circumstances sufficient to put one on inquiry [for purposes of constructive notice] presents a question of fact inappropriate for summary disposition." *Manokoune v. State Farm Mut. Auto. Ins. Co.,* 2006 OK 74, ¶ 18, 145 P.3d 1081, 1085–86. On the record before this Court, in a case with substantial controversies about City's operation, maintenance, and repair of its sewer lines, summary judgment is not appropriate.

## CONCLUSION

¶ 22 Reasonable minds could differ on whether City exercised reasonable care in the maintenance, operation, and repair of its sewer system, and a genuine dispute exists with regard to whether City had actual or constructive notice of defects in the sewer in question. We therefore hold that it was error to grant the motion for summary judgment, and we reverse the trial court's order and remand the matter for further proceedings consistent with this opinion.

¶ 23 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

RAPP, C.J., and FISCHER, P.J., concur.